PATERSON *v.* DUST.

MUNICIPAL CORPORATIONS—RIVERS—WATERS AND WATERCOURSES—
   PARKS—CONTAMINATION OF WATERS—RIPARIAN RIGHTS.
   Where a city owned an island in the Detroit river which
   it used for park purposes, including a bathing pavilion
   and pool used by the general public, and it was the custom
   of the owners of houseboats to anchor off the shore of
   the island in shallow portions of the river, and dump
   garbage and sewage into the stream, which carried the
   contaminating substances down to the bathing beach, the
   city was entitled to enjoin the further pollution of the
   stream with unwholesome and unsanitary material and
   to enjoin the anchoring of such craft within a reasonable
   limit from the shore.

Appeal from Wayne; Van Zile, J. Submitted April 16, 1915. (Docket No. 141.) Decided March 31, 1916.

Bill by Walter G. Paterson and others against William T. Dust, commissioner of parks and boulevards of the city of Detroit, and others, for an injunction restraining defendants from interfering with the anchoring or mooring of any boats of complainants at certain places in the Detroit river. Defendants filed an answer in the nature of a cross-bill for an injunction restraining complainants from anchoring their houseboats near the shore of Belle Isle. From a decree for defendants, on their cross-bill, complainants appeal. Affirmed.

*Charles S. Hampton,* for complainants.

*Walter Barlow* (*William E. Tarsney,* of counsel), for defendants.

BIRD, J. Complainants filed their bill praying for an injunction to restrain William T. Dust, commis-

sioner of parks and boulevards of the City of Detroit, from interfering with the anchoring or mooring of their houseboats in the shallow water on the north side of Belle Isle Park. Defendants answered and set up affirmative matter in the nature of a cross-bill, and prayed for a temporary and permanent injunction, restraining complainants from anchoring their houseboats as above set forth. Upon the hearing the court decreed a permanent injunction restraining the complainants from anchoring their boats near the island as prayed for in defendants' cross-bill.

It appears from the pleadings and concessions of counsel that Belle Isle Park is located upon an island in the Detroit river, opposite the city of Detroit; that the city has title thereto, it having been authorized to purchase the same by the legislature at its session of 1879 (Act No. 391, Local Acts 1879) ; that the city of Detroit has expended large sums of money in beautifying the island and making it suitable and convenient for park purposes; that it has erected and maintains, at a large expense, in the shallow water on the north side of said island, a bathing pavilion, and employs life guards to look after the safety of the bathers; and that these privileges were taken advantage of by nearly a quarter of a million of its people during the season of 1915.

It further appears that several years ago the city of Detroit gave the yacht club the right to erect a clubhouse on the north side of the island, a short distance from the bathing grounds, and gave them the right to use the waters for 1,000 feet east of said clubhouse. The houseboats in question were moored in a bay west of the clubhouse, but upon no part of the island leased to the club. Complainants lived upon these houseboats during the heated season with their families and friends, and discharged their garbage and night soil into the river, and the testimony tends to

show that the current carried these down into the swimming grounds, and rendered the water unfit in which to bathe. It is claimed by complainants that the testimony is insufficient to establish this fact, but the chancellor found otherwise, and it was decreed that they—

"and each of them, their families and friends, be perpetually enjoined from anchoring their said boats and houseboats (described in their bill of complaint and in the answer of the defendants filed herein) in the waters adjacent to said island within the red lines drawn around said island, as shown in Exhibit A attached to the answer of the defendants filed herein and from living thereon and using the same as houseboats in said waters."

The respective counsel have prepared excellent briefs, and have discussed several propositions of law, and we conclude from an examination of them that in the main they are agreed as to the general propositions of law which must control the case. They agree that the city of Detroit is the owner of the island; that it owns the land underneath the water to the center of the stream; that such ownership gives it control subject to the rights of navigation. It is contended by complainants that the rights of navigation include the right to moor their houseboats in the manner in which they did. On the other hand, it is insisted on behalf of the city that the right to navigate the waters of the river does not include the right to anchor their houseboats in such position and discharge the garbage and night soil therefrom into the current, where it will be brought down to the swimming grounds, and thereby pollute the water. We conclude, therefore, that the two questions for determination are one of fact and one of law; the question of fact being whether the testimony was sufficient to sustain the decree; the question of law being as to whether within the rights

of navigation are included the right to anchor their houseboats indefinitely in that position, and discharge their waste into the water.

*The Question of Fact.* The chancellor who sat in this case and heard the testimony held that the testimony established the fact that the garbage and night soil were deposited from these houseboats into the water and into the current, and were thereby carried down stream to the swimming grounds, rendering them unwholesome and unfit for use. We have reviewed the testimony by which he arrived at this conclusion, and we think it supports the conclusion reached, and we are not disposed to disturb it.

*The Question of Law.* Counsel are agreed that whatever rights the city of Detroit has in the water by reason of ownership of the island are subservient to the rights of navigation, but they disagree as to the extent of the rights included within the rights of navigation. Complainants' counsel take the position that the right to navigate the waters of the river carries with it the right to anchor their boats as they have heretofore done. This right to anchor once established, complainants' argument proceeds upon the theory that defendants' whole case is met, but in this they are in error; it is not their whole contention. The city concedes the right of the complainants to navigate the river with their houseboats, and concedes the right to anchor as an incident thereto, but denies the right of complainants to anchor indefinitely immediately above its swimming beach, and pollute the water to the extent of making it unwholesome and unfit for bathing. The contention of the city in this respect appeals to us. The authorities are nearly all agreed that a riparian owner has a right to the enjoyment of the waters that flow past his premises in an unpolluted state. 29 Cyc. p. 335, and cases. This is no more nor less than a recognition of the common-law doctrine

that one is under obligation to exercise his rights with some regard to the rights of his neighbor.

Analogous to the right to navigate the water and anchor is the right to travel the public highway and stop. Because of the latter right it would hardly be contended that one had the right to take his family in a moving van, stop on the highway near a farm dwelling, and remain until the air was contaminated by the poisons arising from his deposits of garbage and night soil. We have no difficulty in reaching the conclusion that the city of Detroit, as riparian owner, is entitled to some relief in this respect. Gould on Waters, § 95; 29 Cyc. pp. 333-335; *Lorman* v. *Benson,* 8 Mich. 18, 33 (77 Am. Dec. 435) ; *People's Ice Co.* v. *The Steamer Excelsior,* 44 Mich. 229 (6 N. W. 636, 38 Am. Rep. 246) ; *Attorney General, ex rel. Wyoming Township,* v. *City of Grand Rapids,* 175 Mich. 503 (141 N. W. 890, 50 L. R. A. [N. S.] 473, Am. & Eng. Ann. Cas. 1915A, 968).

The decree of the trial court prohibited complainants from anchoring within the limits of the red line shown on Exhibit A. The red line referred to is a line fixed by the War Department around the island, indicating the limits to which the city is authorized to extend the shore line. We are in accord with the conclusions reached by the chancellor and with the relief granted.

The decree will be affirmed. No costs will be allowed in this court.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.