HALL v. WANTZ.

1. NAVIGABLE WATERS—RIPARIAN RIGHTS—GREAT LAKES—INLAND LAKES.
   Riparian rights of owners of land on the Great Lakes and those on inland lakes are not identical.

2. WATERS AND WATERCOURSES—INLAND LAKE—OWNERSHIP OF SUBAQUEOUS LAND.
   Ownership of land bordering on an inland lake carries with it ownership of the land under water to the middle of the lake irrespective of the depth or navigability of the water.

3. NAVIGABLE WATERS—SUBAQUEOUS LAND—OWNERSHIP.
   Determination as to individual ownership of subaqueous lands in navigable inland lake is unnecessary in suit against owner of covered raft continuously anchored in deep water and who permitted fishing therefrom for a consideration, where the adjacent lot owners indisputably own between them the riparian rights relating to the subaqueous lands, if owned by anyone, and defendant owns no lake shore property or riparian rights whatever.

4. WATERS AND WATERCOURSES—NAVIGABLE WATERS—RIPARIAN OWNERS—TRESPASS.
   The rights of riparian owners are subject to the right in other riparian owners to use the surface of the whole lake for boating and fishing in the case of private inland lakes or an easement of navigation in the public in navigable inland lakes where access may be had without trespass upon the fast land of riparian owners.

---

REFERENCES FOR POINTS IN HEADNOTES

[2, 3]  56 Am Jur, Waters §§ 51, 464.
[2, 3]  Title to beds of natural lakes or ponds.  23 ALR 757; 112 ALR 1108.
[4–6]  56 Am Jur, Waters §§ 179 et seq., 275.
[4–6]  Boating and fishing on inland lakes.  5 ALR 1056.
Rights, privileges, or easements of public, its grantees or licensees, on land bordering on navigable water.  53 ALR 1191.

5. NAVIGABLE WATERS—RIGHT OF NAVIGATION—INDEFINITE ANCHOR-
   AGE—NUISANCE.

   The easement or right of navigation in members of the public,
      who are not riparian owners, does not include the right to
      anchor indefinitely or attach traps to the subaqueous lands of
      the riparian owner or to the ice covering it for the purpose
      of catching fur-bearing animals, particularly when the an-
      chorage is attended with the dumping of refuse, pollution of
      the waters, and consequent impairment of the riparian owner's
      use and enjoyment of his property rights.

6. SAME—INDEFINITE ANCHORAGE—TRESPASS—INJUNCTION.

   The indefinite anchorage of a covered raft by defendant who
      owned no riparian rights in property on shore of deep, naviga-
      ble inland lake, and on which he conducted business of afford-
      ing fishing privileges for a consideration was guilty of a tres-
      pass to which the riparian owners were entitled to injunctive
      relief.

Appeal from Muskegon; Pugsley (Earl C.), J.,
presiding. Submitted October 16, 1953. (Docket
No. 56, Calendar No. 45,609.) Decided March 10,
1953.

Bill by William Hall and others against Lozier
Wantz to restrain the mooring or anchoring of
"Ark" along shore of their properties. Decree dis-
missing bill. Plaintiffs appeal. Reversed and in-
junction granted.

*Balgooyen, Parmenter & Forsythe,* for plaintiffs.

*Charles A. Larnard,* for defendant.

DETHMERS, C. J. Plaintiffs are owners of lots
fronting on White lake in Muskegon county. The
lake is a navigable body of water into which White
river flows, and has an outlet through a channel into
Lake Michigan. Defendant owns and operates a 25-
by-40-foot floating raft called "The Ark" off the
shore of plaintiffs' lots, keeping it continuously

anchored to the subaqueous lands of some of them, at a location 600 to 1,000 feet from plaintiffs' shore and between it and the center of the lake, in waters 40 to 50 feet deep. A house and fishing wells have been constructed on the raft and defendant permits persons to fish therefrom for a consideration paid to him.

Plaintiffs filed a bill of complaint praying for a perpetual injunction restraining defendant from mooring or anchoring the "Ark" along the shore of their properties. From decree dismissing their bill of complaint plaintiffs appeal.

The trial court's opinion, after stating that owners of property fronting on "small inland lakes * * * own the land under the water to the middle of the lake," suggests that a different rule obtains in that regard with reference to large, navigable, inland lakes, at least at points where the waters are deep. In that vein there is quoted from *Rice* v. *Ruddiman*, 10 Mich 125, the following:

"If the water becomes so deep in approaching the center of the lake as to render the lands under it incapable of such private or individual use, the question of ownership, beyond where it is available for such purpose, becomes as barren as the use itself; and is of no practical importance whatever."

The quoted language is that of 1 of the 4 judges then serving on this Court, each of whom wrote a separate opinion in the case. It is dicta inasmuch as the holding in the case was that ownership of land bordering on the lake carried with it ownership of the particular land under water there in controversy. It happens that in that case the waters at the point in question were shallow. There was no occasion to consider whether the rule announced might have been otherwise in the case of deep waters. As the writer of the quoted opinion stated, whether riparian owner-

ship extended to the center of the lake was not involved in the case, the only question being whether it extended to the point in controversy which was rather near shore in shallow waters. It is apparent that the language quoted by the trial court stemmed from (1) uncertainty on the part of the then members of this Court as to whether Muskegon lake, there involved, was to be treated as being an inland lake or an arm of Lake Michigan, (2) the apparent belief, as appears from expressions of some of the judges in the case, that the riparian rights of owners on the Great Lakes and those on inland lakes are indistinguishable, and, finally, the consequent difficulty encountered by the Court with the thought that it might be forced to an absurd holding concerning the nature of a riparian owner's rights to the subaqueous lands in the middle of Lake Michigan. That the riparian rights of owners on the Great Lakes and those on inland lakes are not identical has long since been established in this State. See *Bauman* v. *Barendregt,* 251 Mich 67; *Hilt* v. *Weber,* 252 Mich 198 (71 ALR 1238); *Burt* v. *Munger,* 314 Mich 659. Had this concept been clearly established at the time this Court was considering *Rice* v. *Ruddiman, supra,* the unfortunate dicta therein undoubtedly would have been avoided. At the same time, there is considerable language in the opinions in the *Rice Case* which indicates that the Court was of the view that riparian rights on all interior waters are the same. No Michigan case has come to our attention in which it has been held that the riparian rights of an owner on an inland lake do not extend to the center merely because the waters are at that point so deep as to render the subaqueous lands incapable of private use. The holdings in the cited cases of *Sterling* v. *Jackson,* 69 Mich 488 (13 Am St Rep 405); and *Jones* v. *Lee,* 77 Mich 35, are definitely not of that purport.

The problem, touched upon in the *Jones Case,* of how to determine, as between adjacent lot owners on an irregular or curved shoreline, the respective boundaries of the subaqueous lands of each, necessitating, as the Court there stated, reference not only to the filum aquae but recourse as well to some other rule of proportion, is a question not before us here, inasmuch as the adjacent lot owners, who undisputedly own between them the riparian rights relating to the subaqueous lands in question, if anyone does, have joined as party plaintiffs in a suit against the defendant who owns no property on the lake shore or riparian rights whatsoever.

Our attention is directed to no Michigan case in which the holding, as distinguished from dicta, is that, rights of navigation assumed, the riparian rights of owners on large, navigable, inland lakes differ from those on small inland lakes. (We are mindful of the different situations presented by meandered as distinguished from nonmeandered lakes.) On the contrary, as was said in *Bauman v. Barendregt, supra:*

"In this State, natural waters have been divided into 2 classes, the Great Lakes and inland waters. Titles and rights in the latter were early declared to be governed by the same rules of law, whether they were rivers, lakes, or ponds, and whether the lakes were large or small. *Rice* v. *Ruddiman,* 10 Mich 125; *Turner* v. *Holland,* 65 Mich 453. They are treated and designated generally as watercourses. The titles to the beds are in the riparian owners."

In the recent case of *Burt* v. *Munger, supra,* we reiterated the rule "that under the law of Michigan the riparian proprietors own to the middle of the lake."

It is recognized that the rights of riparian owners are subject to the right in other riparian owners to

use the surface of the whole lake for boating and fishing in the case of private inland lakes (*Burt* v. *Munger, supra*) or an easement of navigation in the public in navigable inland lakes, with inlets and outlets, where access may be had without trespass upon the fast land of riparian owners. *Douglas* v. *Bergland,* 216 Mich 380 (20 ALR 197); *Collins* v. *Gerhardt,* 237 Mich 38.

The easement or right of navigation in members of the public, who are not riparian owners, does not include the right to anchor or attach traps to the subaqueous lands of the riparian owner or to the ice covering it for the purpose of catching fur-bearing animals. *Johnson* v. *Burghorn,* 212 Mich 19 (11 ALR 234).

In *Paterson* v. *Dust,* 190 Mich 679, it was held that while a riparian owner's property rights to subaqueous lands are subject to an easement in the public for navigation purposes and are subject to the right to anchor as an incident to the right of navigation, nevertheless the right of navigation does not include, as an incident thereto, the right to anchor indefinitely off the riparian owner's premises, particularly when, as claimed in this case, it is attended with dumping of refuse, pollution of the waters, and consequent impairment of the riparian owner's use and enjoyment of his property rights.

The rights of a riparian owner are somewhat similar to those of an abutting owner in the case of highways and streets. The latter owns the fee to the middle of the highway or street, subject only to the easement in the public to use the same for highway or street purposes. *Werner* v. *Hinz,* 172 Mich 360; *Loud* v. *Brooks,* 241 Mich 452. In *People, ex rel. Director of Department of Conservation,* v. *LaDuc,* 329 Mich 716, after restating the rule that the fee in the soil is in the abutting owner where a public

road is established over it, subject to use by the public as a road, this Court said:

"In *Furlong* v. *Deringer, Inc.,* 111 Vt 220 (13 A2d 186), the court in a like case granted injunctive relief and said:

" 'That the public is entitled to a proper viatic use of a highway is too well established to need argument or citation of authority. However, this fact does not avail the defendant in this case. * * * It (defendant) is here claiming the right to occupy plaintiff's land (within the highway boundaries) for the purpose of conducting a business for its private gain and profit. It makes an attempt to justify its claim upon the ground that the nature of its business is such that the travelling public is convenienced thereby. This same argument may be used with equal force to one who sets up on another's land within highway limits a gas station, garage, restaurant and dozens of other business stands. Here the defendant is attempting to take another's property for its private use against the will and without the consent of the owner. This cannot be done. (Citing authorities.)'

"In *State* v. *Muolo,* 119 Conn 323 (176 A 401), in passing upon an issue like that in the instant case, the court said:

" 'For one otherwise (than in lawful use of the highway) to maintain a place of private business in the highway in front of another's property is to commit a wrong against the owner of the fee. (Citing numerous cases.)'

"While we deem it unnecessary to analyze or quote from them, as being quite pertinent to the phase of the law involved in the instant case, we cite the following: *People* v. *Foss,* 80 Mich 559 (8 LRA 472, 20 Am St Rep 532); *Smeberg* v. *Cunningham,* 96 Mich 378 (35 Am St Rep 613); *Crosby* v. *City of Greenville,* 183 Mich 452."

It was held in the *LaDuc Case* that plaintiff, as abutting owner on both sides and therefore owner in

fee of the soil over which the highway was established, was entitled to injunctive relief restraining defendant from conducting a boat livery for hire from a dock extended from the end of such highway into a river of which plaintiff owned both banks at that point and, hence, the riparian rights pertaining thereto. The holding was predicated on a finding that defendant was not merely making such use of the highway as the public in general is entitled to, but, instead, was using it at the place indicated as a situs for carrying on a private enterprise. Defendant, in the instant case, is not confining himself to the exercise of the rights of the public generally to navigation, but goes beyond that to engage in a practice not incident to or a part of the right of navigation, namely in permanent or indefinite anchoring of his "Ark" to plaintiffs' subaqueous lands and keeping the same in waters over such lands for the purpose of conducting a business there.

*Rosema* v. *Construction Materials Corp.*, 258 Mich 457, and *McMorran* v. *Cleveland-Cliffs Iron Co.*, 253 Mich 65, are cited for the proposition that plaintiffs' remedy, if any, is at law. While we are satisfied that statements in those 2 cases to that effect were incorrect, it is to be observed that in neither of those cases did the Court hold that defendant was guilty of trespass. In the instant case we have no doubt that defendant is guilty of a trespass, and, under such circumstances, plaintiffs' right to injunctive relief is well established. *People, ex rel. Director of Department of Conservation,* v. *LaDuc, supra; Davis* v. *Township of Frankenlust,* 118 Mich 494; *Putnam* v. *Kinney,* 248 Mich 410.

Decree of the trial court dismissing plaintiffs' bill of complaint is vacated and a decree may enter in this Court granting to plaintiffs a permanent injunc-

tion as in their bill of complaint prayed, with costs of both courts to plaintiffs.

ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.