Michael S. ANDREWS and Brenda S.L. Andrews, husband and wife, Plaintiffs,

v.

HOLLY TOWNSHIP, Defendant.

No. 01–74433.

United States District Court, E.D. Michigan, Southern Division.

Aug. 21, 2002.

Sidney M. Berman, Arthur A. LeVasseur, Delmas A. Szura, Fischer, Franklin, Detroit, MI, for Michael S. Andrews, Brenda S.L. Andrews.

James E. Tamm, O'Connor, DeGrazia, Bloomfield Hills, MI, for George Barton, Dale M. Smith, Township of Holly.

Barbara A. Schmidt, Michigan Department of Attorney General, Natural Resources Division, Lansing, MI, for K. L. Cool.

### MEMORANDUM AND ORDER DISMISSING COMPLAINT WITHOUT PREJUDICE

COHN, District Judge.

#### I. Introduction

This is a property rights case. Plaintiffs Michael Andrews and Brenda Andrews (the Andrews) own property on Marl Lake, a private lake[1] in defendant Holly Township.[2] The Andrews claim that the adoption of Holly Township Ordinance No. 72 (the "no wake ordinance") (attached as Exhibit A) which made Marl Lake a no wake lake[3] is invalid under Michigan's Natural Resources and Environmental Protection Act (NREPA), M.C.L. § 324.101, et seq, and violates their constitutional rights under the Michigan Constitution, the United States Constitution, and federal law.

Before the Court is defendant's motion for judgment on the pleadings and motion for summary judgment and plaintiffs' cross motion for summary judgment. Following a hearing on July 17, 2002, the Court directed the parties to file supplemental papers because of the confusing state of the record regarding the series of events leading to the adoption of the no wake ordinance, including the Department of Natural Resources (MDNR) file on Marl Lake.[4] Holly Township's supplemental paper argues, for the first time, that the Court should exercise its discretion and abstain from ruling on the Andrews' complaint because it raises important issues of state law—the validity of the no wake ordinance under NREPA. The Andrews disagree, arguing that the Court should not abstain because their complaint raises issues of constitutional significance.

For the reasons which follow, the Court agrees with Holly Township that the case raises issues more appropriately first considered by the Michigan courts and therefore will dismiss plaintiffs' complaint without prejudice based on application of the abstention doctrines found in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) and *Railroad Commis-*

---

1. There is no public right of access to Marl Lake.

2. Plaintiffs also initially sued George Barton (Barton), Holly Township Commissioner, Dale Smith (Smith), Holly Township supervisor, in their individual and official capacities, and K.L. Cool, Director of the Michigan Department of Natural Resources. Plaintiffs later agreed to dismiss their claims against them.

3. "Slow-no wake speed" is defined under NREPA as "a very slow speed whereby the wake or wash created by the vessel would be minimal." M.C.L. § 324.80104(k).

4. As will be discussed, the MDNR, under Michigan law, played a considerable role in the adoption of the no wake ordinance.

*sion of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

## II. Background

### A. Adoption of the No Wake Ordinance

The material facts as gleaned from the parties' papers follow: [5]

Marl Lake is a 20.7 acre private lake in Holly Township. The Andrews own lakefront property and part of the lake bed.[6] The Andrews purchased their property on in 1993. At that time, the Andrews assert that Marl Lake was an "all sports" lake, meaning there were no local restrictions on its use. Ten families own property around the shoreline.

In a letter dated August 10, 1998, eight of the property owners, not including the Andrews, wrote a letter to Holly Township, stating in relevant part:

> To Whom it May Concern:
>
> Below is a list of Marl Lake Homeowner's that would like to request the Township of Holly to schedule a meeting date with the DNR for an evaluation of Marl Lake. The purpose of the evaluation would be to recommend that Marl Lake be posted with the Township of Holly as a "no wake" lake.

At the September 15, 1998 Holly Township Board of Trustees (Trustees) meeting, Holly Township Supervisor Dale Smith mentioned the letter. Several of the property owners who signed the letter were present at the meeting. According to the minutes, these property owners were concerned about the use of jet skis and shore line soil erosion on the lake. The Trustees adopted a resolution at the meeting:

> Where as eight (8) property owners have petitioned the Holly Township

Board of Trustees to initiate the dedication of Marl Lake as a "no wake" lake, due to the size of the lake and the increase in soil erosion, the Holly Township Board authorizes the Michigan Department of Natural Resources to conduct a public hearing and investigation.

On October 1, 1998, the Holly Township Supervisor wrote a letter to Lieutenant Lyle Belknap of the MDNR, Law Enforcement Division, stating in part:

> Per our phone conversation of August 19, 1998, please find enclosed a certified copy of Township of Holly Resolution 98–10, Resolution Requesting Michigan Department of Natural resources to Conduct Investigation of Marl Lake for Declaration as a "No Wake" Lake. Also, please find enclosed copies of letters, newspaper articles and other correspondence sent to you at the request of Marl Lake residents.

On October 5, 1998, the MDNR, through Sergeant Ozzie R. Bryant, Marine Safety Specialist, Law Enforcement Division, wrote a letter to the Holly Township Supervisor indicating receipt of the Resolution, stating in part:

> If no other watercraft control ordinances are in effect, please call this office and leave a message . . . .
>
> After receiving . . . your phone call message, I will be scheduling a public hearing in the near future and will contact you regarding arrangements for this hearing.

At the October 20, 1998 Trustees meeting, the Andrews objected to a no wake designation of Marl Lake as did some other property owners.

---

**5.** Many of the documents referenced in this part were not in the record prior to the Court's request for supplemental papers and the MDNR file.

**6.** In Michigan, the owner of land abutting inland lakes other than the Great Lakes takes title to the center of the lake bed. *Hall v. Wantz,* 336 Mich. 112, 116, 57 N.W.2d 462 (1953); *Bauman v. Barendregt,* 251 Mich. 67, 70, 231 N.W. 70 (1930).

On Sunday April 25, 1999, the following notice, published by the MDNR, appeared in the Tri–County News, a newspaper of general circulation in Holly Township:

### PUBLIC NOTICE

At the request of Holly Township, Oakland County, State of Michigan and by the authority conferred on the Department of Natural Resources by Section 120–17 of Act 451, Part 801, Public Acts of 1994, as amended, and Section 250 of Act 380, Public Acts of 1965, and Section 41 of Act 306, Public Acts of 1969, a hearing will be held at the Holly Township Hall, 102 Civic Drive, Holly, Michigan 48442, at 7:00p.m., Wednesday, May 5, 1999.

At this hearing the Department of Natural Resources **will gather information from the public concerning possible problems on the waters of Marl Lake in Holly Township, Oakland County,**

. . . .

All interested persons are invited to attend and offer comments orally at the public hearing. Interested persons unable to attend this hearing may, within 30 days after the hearing, submit written comments to:

Department of Natural Resources
Law Enforcement Division
District 10
38980  Seven Mile Road
Livonia, Michigan 48152

The Andrews say that they never saw the notice.

The MDNR held a hearing on May 5, 1999. A document entitled "MDNR Public Hearing Re: Marl Lake May 5, 1999," states in relevant part:

Hearing held at Holly Township with ten residents and three MDNR officers present. Lake has not been investigated yet but will be personally viewed by the officers immediately after tonight's meeting. One of the officers suggested that in addition to a "no wake" ordinance we also pass an electric motors only ordinance.

The document also lists "Comments" from the "ten residents," all of whom were in favor of a no wake restriction. The document ends with the following statement: "MDNR will now prepare an investigative report and forward to Holly Township for further action." Thereafter, Sergeant Jann Gallagher of the MDNR signed a report dated July 8, 1999 which recommended that Holly Township adopt an ordinance making it "unlawful for the operation of a vessel to exceed a slow no wake speed " on Marl Lake.

On July 19, 1999, Brian Fish, a Sergeant with the MDNR's Law Enforcement Division, Marine Safety Section, sent the Holly Township Supervisor a letter stating in relevant part:

The [MDNR] has, as requested by resolution of Holly Township, investigated the need for special water craft controls. The Department FINDS that SIGNIFICANT CONDITIONS presently exist which necessitate the establishment of controls more restrictive that those currently within the Natural Resources and Environmental Protection Act being Public Act 451, of 1994, part 801 Marine,

On May 5, 1999, a public hearing was held at the Holly Township Hall. Eleven local citizens, and the hearing officer Lieutenant Linda Morgan were in attendance at the hearing.

The purpose of the hearing was to determine if an ordinance to establish a slow no wake speed control for the waters of Marl Lake was needed.

Testimony was given by many of the persons attending the hearing. They were in support of the proposed watercraft control. There was no opposition to the proposal at the hearing, nor were

any letters received opposing the proposal, there were several letters received in support of the proposal.

Relevant testimony by attendees indicated that there is a concerns about swimmer safety and that of small boat users when any high-speed boating is conducted on Marl Lake. State law enforcement officers indicated that due to the small size of Marl Lake there is a valid safety concern when the area is used for high-speed boating.

Based on the response from the hearing and discussions with the hearing's officer, the Department of Natural Resources, Law Enforcement Division, recommends a slow-no wake speed control for Marl Lake.

Enclosed is a copy of a proposed ordinance for the waters of Marl Lake. The Natural Resources and Environmental Protection Act 451 of 1994, requires that the governing body inform the Department within sixty (60) calendar days that it approves or disapproves the proposed ordinance. The wording of the ordinance must be identical to the one enclosed. When the ordinance has been enacted, please submit proof of publication to this office. Proof of publication must show the ate and name of the paper, in other words, the entire page, not just the item, from the local paper. At this time the ordinance will be considered in effect. We will notify you of our effective date . . . . . [7]

A Holly Township attorney drafted what is now Ordinance No. 72 which establishes Marl Lake as a no wake lake.

At the August 17, 1999 Trustees meeting, a draft of Ordinance No. 72 was presented. A motion was made "to approve Ordinance No. 72, Marl Lake No Wake Ordinance, per the recommendation from the MDNR to have slow no wake speeds on Marl Lake, to become effective 30 days after publication." The motion passed.

The no wake ordinance was published in the Holly Herald Advertiser on August 19, 1999 and on August 25, 1999, Holly Township filed in its records an "Affidavit of Publication".

At the September 21, 1999 Trustees meeting, several property owners, not the Andrews, objected to the no wake ordinance and asked the Trustees to rescind it. The Trustees then voted to send the no wake issue back to the MDNR with a request that it reopen the public hearing.

According to the minutes of the October 19, 1999 Trustees meeting, the Holly Township Supervisor stated he had talked to the MDNR and that they would not reopen the public hearing. He then invited property owners present to speak on both sides of the issue. The following statement appears in the minutes:

> Supervisor Smith said that, since the seasonal use of the lake is over until next summer he would like to see the residents on Marl Lake work out a compromise for the use of the lake. This issue was discussed further. Supervisor Smith said he would like to see something worked out and put into some kind of recordable agreement. He felt that if a recordable agreement was worked out over the winter months that the Township Board would consider rescinding the No Wake Ordinance.

Thereafter, a Trustee moved to deny the request to rescind the ordinance. The motion passed.

On October 28, 1999, Lieutenant Lyle Belknap of the MDNR Law Enforcement

---

**7.** The authority of Sergeant Gallagher to sign the report and of Sergeant Fish, to send the letter, which was the operative MDNR action, is not a part of the record. The MDNR acts through its director or persons to whom the director has lawfully delegated decisionmaking authority. *See* M.C.L. § 229.13.

Division wrote the Holly Township Clerk stating that the no wake ordinance became effective August 19, 1999.

On July 10, 2000, the Holly Township Supervisor convened a special meeting of the Trustees to discuss the no wake ordinance issue. Parties from both sides, including the Andrews, were present at the meeting. The following statement appears in the minutes:

Reasons were given for maintaining the No Wake Ordinance such as Safety per the MDNR review (people were going in excess of 50 MPH), 7 out of the eleven residents favor it, the MDNR recommended it, the opposition did known of the intention of the No Wake Ordinance, and the lake is just over 20 acres, and only 2 out of 10 of the No Wake Lakes in Oakland County were under the size of Marl Lake.

. . . .

Supervisor Smith recommended that the board resolve to have the MDNR look at rescinding the ordinance. He was under the understanding that it was the only way that the MDNR would rehear the issue.

The board members did not agree with resolving to look at rescinding the ordinance and it was suggested that it be requested of the MDNR without the rescind language.

A motion was then made to "ask the MDNR to consider the issue with corrected information forwarded to then,[8] have the MDNR physically view the lake, and hold a public hearing at the Township Hall." The motion passed.

On July 19, 2000, the Holly Township Clerk sent a letter to the MDNR request-ing it to reconsider the issue, as stated above.

On August 15, 2000, Thomas Laird, Marine Safety Specialist of the MDNR wrote a letter to the Holly Township Clerk stating in relevant part:

Since the original resolution was submitted, the Department has cooperated with the Township and provided opportunities for public comment throughout the formal investigation process. A public hearing was already held before the proposed local ordinance was submitted to the Township. After the Township approved the proposed ordinance, the Department did not take further action until the Township denied a request to repeal the ordinance.

At that time, the investigative process was completed, and a valid local watercraft control was in place. The Department was not received evidence that conditions on Marl Lake have changed since the control took effect. Nor does the Department consider the size of Marl Lake to be in dispute. The figure used by the Department was 20.7 acres, as calculated by the Land and Minerals Services Division using aerial photographs.

With the investigation process complete and the slow—no wake control in effect, there is not reason to hold another public hearing, unless the Township submits a resolution requesting that the existing local control be rescinded.

At the Trustees meeting on August 22, 2000, the Trustees determined that based on the MDNR's letter, that no action be taken regarding the ordinance, i.e. it was not repealed.[9]

---

**8.** Apparently, some property owners were concerned that the MDNR was given an incorrect size of the lake.

**9.** It is not clear why MDNR action was required after Holly Township adopted the no

wake ordinance in order to rescind or otherwise alter the ordinance. It is clear that MDNR action is a condition precedent to the adoption of the no wake ordinance. However, once adopted, administration of the no

### B. This Case

On March 22, 2002, the Andrews filed a First Amended Complaint.[10] The state law claims asserted are: (1) the no wake ordinance is invalid and unenforceable under NREPA; (2) the notice of the proposed MDNR hearing is constitutionally deficient under the due process clause of the Michigan Constitution; (3) Holly Township exceeded its police powers in enacting the no wake ordinance; (4) the no wake ordinance amounts to a regulatory taking under Art. 10 § 2 of the Michigan Constitution; and (5) the no wake ordinance is an unconstitutional delegation of power under NREPA.

The federal claims asserted are: (1) the notice of the proposed MDNR hearing is constitutionally deficient under the due process clause of the United States Constitution; (2) a claim under 42 U.S.C. § 1983 arising out of Holly Township's "deliberate indifference to [the Andrews'] constitutionally protected rights ... including their rights to procedural and substantive due process and Equal Protection of the law under the Fourteenth Amendment and their right to exercise their First Amendment free speech rights," (First Amended Complaint at ¶ 140); (3) Holly Township's "outright ban on the use of boats and watercraft necessary to engage in certain aquatic sports on Marl Lake—without justification—is not permitted under the Federal Aid in Sport Fish Restoration Act, [16 U.S.C. § 777–777k]" (First Amended Complaint at ¶ 159), and (4) the no wake ordinance amounts to a regulatory taking under the Fifth Amendment to United States Constitution.

The Andrews ask for damages and various forms of injunctive relief.

### III. Analysis

#### A.

##### 1.

The Andrews initially claim that the adoption of the no wake ordinance did not comport with the requirements of NREPA. Subchapter 5, entitled "Watercraft and Marine Safety," grants the MDNR the authority to promulgate regulations on state waters, including the regulation of speed limits. M.C.L. § 324.80108 provides:

> The department may regulate the operation of vessels, water skis, water sleds, aquaplanes, surfboards, or other similar contrivances on the waters of this state. **Where special regulations are determined necessary, the department may establish vessel speed limits**; prohibit the use of vessels, water skis, water sleds, aquaplanes, surfboards, or other similar contrivances; restrict the use of vessels, water skis, water sleds, aquaplanes, surfboards, or other similar contrivances by day and hour; establish and designate areas restricted solely to boating, skin or scuba diving, fishing, swimming, or water skiing; **and prescribe any other regulations relating to the use or operation of vessels, water skis, water sleds, aquaplanes, surfboards, or other similar contrivances that will assure compatible use of state waters and best protect the public safety**. The department shall prescribe special local regulations in such a manner as to make the regulations uniform with other special local regulations established on other

---

wake ordinance falls under the police powers of Holly Township as authorized by state law.

10. The Andrews' complaint, which runs 33 pages and contains 189 paragraphs, is not a model of clarity.

waters of this state insofar as is reasonably possible.

(Emphasis added).

Sections 324.80110, 324.80111, and 324.80112, which provide the procedures to be followed for adopting regulations, are at issue here. It is these sections which the Andrews claim were not followed in the adoption of the "no wake" ordinance. M.C.L. § 324.80110 provides:

The department may initiate investigations and inquiries into the need for special rules for the use of vessels, water skis, water sleds, aquaplanes, surfboards, or other similar contrivances on any of the waters of this state. **If controls for such activities are considered necessary, or changes or amendments to or repeal of an existing local ordinance is required, a local ordinance shall be prepared. Notice of a public hearing shall be made in a newspaper of general circulation in the area in which the local ordinance is to be imposed, amended, or repealed, not less than 10 calendar days before the hearing. Interested persons shall be afforded an opportunity to present their views on the proposed local ordinance either orally or in writing.**

(Emphasis added). Section 324.80111 provides:

A local ordinance proposed pursuant to section 80110 shall be submitted to the governing body of the political subdivision in which the controlled waters lie. Within 60 calendar days, the governing body shall inform the department that it **approves or disapproves of the proposed local ordinance.** If the required information is not received within the time specified, the department shall consider the proposed local ordinance disapproved by the governing body. If the governing body disapproves the proposed local ordinance, or if the 60–day period has elapsed without a reply having been received from the governing body, no further action shall be taken. **If the governing body approves the proposed local ordinance, the local ordinance shall be enacted identical in all respects to the local ordinance proposed by the department.**

Section 324.80112 pertains to situations where, as here, a local political subdivision like Holly Township, seeks to pass an ordinance regarding lake control. M.C.L. § 324.80112 states:

**Local political subdivisions that believe that special local ordinances of the type authorized by this part are needed on waters subject to their jurisdiction shall inform the department and request assistance. All such requests shall be in the form of an official resolution approved by a majority of the governing body of the concerned political subdivision. Upon receipt of such resolutions, the department shall proceed as required by sections 80110 and 80111.**[11]

### 2.

Assuming that the Andrews are correct in their argument that NREPA's mandated procedures were not followed in the adoption of the no wake ordinance,[12] the

---

**11.** In addition to the statutory sections, the MDNR's Law Enforcement Division has published a document, attached as Exhibit B, entitled "Procedures—Local Watercraft Control Ordinance." Apparently, this is the only document which sets forth the MDNR's view as to the procedures under NREPA for pro-

mulgating local water control ordinances such as the no wake ordinance.

**12.** From a review of the events surrounding the adoption of the no wake ordinance, there appears to be a substantial question as to whether or not it was promulgated in compli-

question is whether a federal court is the proper forum for adjudicating the Andrews' state law claims.

## B.   Abstention

As an initial matter, although Holly Township raised the issue of abstention after the filing and briefing of motions for summary judgment and following a hearing on the motions, the issue must nonetheless be considered inasmuch as it goes to the heart of the appropriateness of the exercise of federal jurisdiction in this case. Moreover, the Andrews have had an opportunity to respond to the abstention argument.   Thus, Holly Township was right to raise the issue of abstention even at this late date in the course of the case.

### 1.

■   *Burford* abstention is used to avoid conflict with a state's administration of its own affairs.   *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).   It applies only if a federal court's decision on a state law issue is likely to "interfere with the proceedings or orders of state administrative agencies."   *See New Orleans Pub. Serv. Inc. v. Council of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).   As the Court of Appeals for the Sixth Circuit recently stated, "[t]he *Burford* abstention should not be applied unless: (1) a case presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or (2) the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' " *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir.2002) (citing *Colorado River Water Conservation Dist. v. U.S.*,

ance with NREPA.   However, this question is

424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (discussing *Burford* )).

■   *Pullman*-type abstention is appropriate where 1) an unclear state law is involved and 2) the likelihood that a clarification of the state law would obviate the necessity of deciding the federal claim question.   *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).   *See also Tyler v. Collins*, 709 F.2d 1106, 1108 (6th Cir.1983). Pullman abstention is warranted only when a state law is challenged and resolution by the state of certain questions of state law may obviate the federal claims, or when the challenged law is susceptible of a construction by state courts that would eliminate the need to reach the federal question.   *See, e.g., Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 306, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (interpreting *Pullman* ).   *Pullman* abstention is derived from a case in which a Fourteenth Amendment Equal Protection Clause challenge to a Texas railroad personnel regulation was held to have been prematurely adjudicated in federal court, since a state court's consideration might have rendered the regulation invalid on state law grounds and rendered the federal constitutional question moot.

### 2.

■   Here, the *Burford* abstention doctrine is applicable for several reasons. First, there is a state administrative agency involved in the dispute, the MDNR. Although it is not a named party, it is clear from the record, which now includes the MDNR file, that MDNR action was statutorily required to be involved with the adoption of the no wake ordinance.   Indeed, NREPA provides for the approval of the MDNR.   Second, there are difficult questions of state law whose importance

best left to the Michigan courts.

transcends the issues in this case, such as to the proper procedure for adopting ordinances under NREPA and the interplay between the MDNR and local municipalities. Such issues are best left to the Michigan courts to resolve.

■ Moreover, abstention under *Pullman* is appropriate because this case involves the proper application NREPA, both procedurally and substantively. The constitutional issues are remote. Should the Michigan courts determine that Holly Township did not adopt the no wake ordinance in compliance with NREPA, the Andrews' constitutional claims would likely need not be considered.

Finally, the Andrews argue that abstention is inappropriate because they are also seeking money damages under § 1983, relying on *Quackenbush v. Allstate Ins. Co.* 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). This argument lacks merit. In *Quackenbush,* the Supreme Court stated: "[w]e have not strictly limited abstention to 'equitable cases,' but rather have extended the doctrine to all cases in which a federal court is asked to provide some form of discretionary relief.... Moreover ...we have not held that abstention principles are completely inapplicable in damages actions." 517 U.S. at 730, 116 S.Ct. 1712 (internal citations omitted). Thus, the fact that the Andrews are also seeking money damages does not mean that abstention is unwarranted. As explained above, this case is really about whether or not Holly Township has adopted a valid ordinance, regardless of the Andrews' creative constitutional claims, which is best left to the Michigan courts.

### IV. Conclusion

For the reasons stated above, the Andrews' complaint is DISMISSED.

SO ORDERED.

# EXHIBIT A

002 TUE 15:54   FAX 2486345482 holly township

**HOLLY TOWNSHIP**
**ORDINANCE NO. 72**
**MARL LAKE NO WAKE ORDINANCE**

AN ORDINANCE TO PROVIDE REGULATIONS CONCERNING THE OPERATION OF VESSELS UPON MARL LAKE.

THE TOWNSHIP OF HOLLY ORDAINS:

**Section 1 -- Marl Lake: Slow - No Wake Speed.**

On the waters of Marl Lake in Section 11, Town 5 North, Range 7 East, Holly Township, Oakland County, State of Michigan, it is unlawful for the operator of a vessel to exceed a slow -- no wake speed.

The boundaries of the area described immediately above shall be marked with signs and with buoys. All buoys must be placed as provided in a permit issued by the Department of Natural Resources and be in conformance with the State Uniform Waterway Marking System.

**Section 2 -- Penalty.**

A violation of this ordinance is a misdemeanor.

**Section 3 -- Effective Date.**

This Ordinance shall take effect thirty (30) days after publication as provided by law.

MADE, PASSED, and ADOPTED by the Township Board of Trustees of Holly Township this 17th day of August, 1999.

Motion by Trustee Applegate, Supported by Teasurer Alexander.

5 Ayes, 0 Nayes, 0 Absent

## CERTIFICATION

I, duly appointed clerk of the Township of Holly, County of Oakland, and State of Michigan, do hereby certify that the foregoing is a true copy of Ordinance 72 adopted by the Township Board of Trustees of the Township of Holly at the regular meeting held thereof on the 17th day of August, 1999.

*Karin S. Winchester*
Karin S. Winchester, Clerk

ORDINANCE SUMMARY DRAFTED BY:

BOOTH PATTERSON, P.C.
By: Allan T. Motzny
1090 West Huron Street
Waterford, MI 48328
(248) 681-1200

Published: 8-19-99
Effective: 9-18-99

## EXHIBIT B

### PROCEDURES - LOCAL WATERCRAFT CONTROL ORDINANCE

### MICHIGAN DEPARTMENT OF NATURAL RESOURCES
### LAW ENFORCEMENT DIVISION

On certain bodies of water, high speed boaters, water skiers, swimmers, fishermen and others using the waters find that their varied recreational activities generate conflict situations and serious problems. Safety problems not specifically enforceable by the provisions of P.A. 451, 1994, Part 801, as amended are the only marine related issues that will be given consideration for establishing a local ordinance. Issues concerning trespass, disorderly conduct, or damage caused to private property by the wake of vessels are not valid safety considerations for establishing a local ordinance.

Local political subdivisions which believe that special local ordinances of the type authorized by this act are needed on waters in their jurisdiction shall inform the department and request assistance. All such requests shall be in the form of an official resolution approved by a majority of the governing body of the concerned political subdivision. Upon receipt of such resolutions the department shall proceed as required by sections 14 and 15 of Public Act 451, Part 801, Public Acts of 1994, as amended.

The department may initiate investigations and inquiries into the need for special rules for the use of vessels, water skis, water sleds, aquaplanes, surfboards, or other similar contrivances on any of the waters of this state. If controls for such activities are considered necessary, or changes or amendments to or repeal of an existing local ordinance is required. The Department may consider a local ordinance at this time. Notice of a public hearing shall be made in a newspaper of general circulation in the area in which the local ordinance is to be considered, amended, or repealed, not less than 10 calendar days before the hearing. Interested persons shall be afforded an opportunity to present their views on the proposed local ordinance either orally or in writing.

A local ordinance proposed pursuant to section 14 shall be submitted to the governing body of the political subdivision in which the controlled waters lie. Within 60 calendar days the governing body shall inform the department that it approves or disapproves of the proposed local ordinance. If the required information is not received within the time specified, the department shall consider the proposed local ordinance disapproved by the governing body. If the governing body disapproves the proposed local ordinance, or if the 60-day period has elapsed without a reply having been received from the governing body, no further action shall be taken. If the governing body approves the proposed local ordinance, the local ordinance shall be enacted identical in all respects to the local ordinance proposed by the department.

Further information may be obtained by contacting:

Michigan Department of Natural Resources
Law Enforcement Division
Marine Safety Section
P.O. Box 30031
Lansing, Michigan 48909
or call: - 517-335-3422