James W. McCULLEY, Plaintiff,

v.

N.Y.S. DEPARTMENT OF ENVIRONMENTAL CONSERVATION, et al., Defendants.

No. 8:05–CV–0811 (LEK/DRH).

United States District Court, N.D. New York.

May 17, 2006.

424

Smith, Dwyer & Bliss, P.C., of Counsel: Matthew D. Norfolk, Esq., Lake Placid, NY, for Plaintiff.

Eliot Spitzer, Attorney General for the State of New York, Department of Law, of Counsel: David A. Munro, Esq., Assistant Attorney General, Environmental Protection Bureau, Albany, NY, for Defendants.

## MEMORANDUM–DECISION AND ORDER [1]

LAWRENCE E. KAHN, District Judge.

This case was originally before the Court on Plaintiff James W. McCulley's ("Plaintiff") Complaint, accompanied by an Order to Show Cause for an emergency motion for an *ex parte* temporary restraining order, against Defendants New York State Department of Environmental Conservation ("NYS DEC"), Acting Commissioner of the NYS DEC Denise M. Sheehan, Commissioner of NYS DEC Erin Crotty, NYS DEC Region 5 Regional Director Stuart Buchanan, NYS DEC Regional Forrester Thomas D. Martin, Region 5 of the NYS DEC, NYS DEC Conservation Regional Attorney Christopher Lacombe, NYS DEC Forest Ranger Joseph LaPierre, and NYS DEC Officers and Employees "John Does '1' through '10'" ("Defendants"). *See* Dkt. Nos. 1 & 2. Defendants subsequently moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), requesting that this Court abstain from exercising jurisdiction over Plaintiff's claims and arguing that state administrative proceedings and state court review are the proper avenues for relief in the first instance. Defts' Mem. (Dkt. No. 11).

Oral argument was held on Defendants' motion on Friday, October 7, 2005. Following that, this Court referred the matter to the Honorable David R. Homer, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b), for an evidentiary hearing and the issuance of a Report–Recommendation concerning bad faith and other exceptions to abstention under the *Younger* and *Pullman* abstention doctrines.[2] November 10, 2005 Order (Dkt. No. 21). Judge Homer held said evidentiary hearing on February 2 and 3, 2006 (*see* Dkt. Nos. 30, 32–36), and issued a Report–Recommendation and Order filed on April 25, 2006 (Dkt. No. 36). Objections to Judge Homer's Report–Recommendation were filed by Plaintiff on May 5, 2006. Plntf's Obj. (Dkt. No. 38). Defendants filed a Response, within ten days of the date of filing of Plaintiff's Objections (*see* FED. R.CIV.P. 72(b); Defts' Letter Br. (Dkt. No. 37)), on May 15, 2006. Defts' Resp. (Dkt. No. 39).

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered Plaintiff's Objections and Defendants' Response, has undertaken a *de novo* review of the record, and has determined that Judge Homer's Report–Recommendation should be approved for the reasons stated therein.[3,4] However, the Court will only

---

1. For printed publication by the Federal Reporters.

2. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971): *R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

3. The Court notes several errors in the Report–Recommendation, although none impact on the overall findings and recommendations. First, Judge Homer's factual recitation of the circumstances surrounding the "backhoe" in-

cident and subsequent telephone call between Ranger LaPierre and Plaintiff on May 21, 2005, is technically incorrect. Judge Homer credited some of the events to the telephone call when they apparently took place prior to said telephone call. *See* Plntf's Obj. (Dkt. No. 38) at 2–4; Hearing Record (Dkt. No. 32) at 159–161. But, the events and conversations did all take place at one time or another. Thus, although Plaintiff contends that the error is a material one, Plntf's Obj. (Dkt. No. 38) at 2, this Court disagrees. *See also* Defts'

adopt the Report–Recommendation in part, in that the Court will not dismiss this action upon abstaining, but will, instead, as addressed below, stay the action pending the outcome of the State proceedings. *See, generally, Berman Enter., Inc. v. Jorling,* 3 F.3d 602, 608 (2d Cir.1993). Accordingly, this Court adopts the learned Magistrate Judge's Report–Recommendation in part, only as to Judge Homer's findings concerning the inapplicability of any exceptions to the *Younger* and *Pullman* abstention doctrines.

Therefore, after consideration of the submissions from the parties, the oral arguments, the Report–Recommendation of Judge Homer, and the relevant law, it is the judgment of this Court that, although Defendants' motion to dismiss is denied,

this Court will abstain from exercising jurisdiction over the claims raised in this matter. The federal claims Plaintiff has raised are intricately related to issues of state law interpretation and determination. Therefore, the State courts and State administrative hearings being the more appropriate fora for this matter, this Federal Court will abstain, and stay the federal claims, until such time as the State proceedings have concluded.

The Court also denies Plaintiff's motion for a temporary restraining order and order to show cause as moot, given the decision of the Court herein.

As the Court will abstain under the *Younger* and *Pullman* doctrines, this Memorandum–Decision and Order will not

---

Resp. (Dkt. No. 39) at 5 n. 5. In addition, Plaintiff contends that the sequence of events is important because the Ranger's call was unwanted and threatening, and Plaintiff drove his vehicle on the road despite the fact that it was something he did not want to do, "because he had spent hundred[s] of hours and about $16,000.00 ... and he could not simply acquiesce to the DEC's unlawful control over the Road...." Plntf's Obj. (Dkt. No. 38) at 4. This Court simply does not accept these arguments. Plaintiff attempts to portray himself as someone entrapped into driving on the Road in question. But, Plaintiff made a choice to do so. And, furthermore, as just stated, the events and conversations in question did all take place at one time or another. There was no material error in Judge Homer's overall determination on this point, or in Judge Homer's subsequent recommendations based on this point.

Second, Plaintiff's Specific Objection 11 appears to be correct, in that Judge Homer has incorrectly set forth the physical and geographical location and layout of the Road. Plntf's Obj. (Dkt. No. 38) at 18–19 (with citations to the Record); Defts' Resp. (Dkt. No. 39) at 4 n. 4. *See also* Report–Rec. (Dkt. No. 36) at 437. However, the Court finds that this error is not of such magnitude as to affect Judge Homer's overall findings and recommendations concerning the applicability of

exceptions to the *Younger* and *Pullman* abstention doctrines.

Third, a pin citation for *Diamond "D" Constr. Corp. v. McGowan,* is incorrectly provided as 282 F.3d at 189. Report–Rec. (Dkt. No. 36) at 442. The correct pin citation is: 282 F.3d at 199. As above, this error does not impact upon the substance of Judge Homer's overall findings and recommendations.

4. This Court further takes issue with Plaintiff's Specific Objection 3. Plntf's Obj. (Dkt. No. 38) at 8–9. Plaintiff claims that Judge Homer erred when he concluded that this Court referred the case to Judge Homer only "for an evidentiary hearing 'addressing bad faith and other exceptions to abstention.'" Report–Rec. (Dkt. No. 36) at 436. Plaintiff is wrong, and Judge Homer was completely correct in his interpretation of this Court's November 10, 2005 Order. Although Plaintiff cites select language from this Court's Referral Order, Plaintiff misses other key language: "McCulley has alleged issues of fact with specificity in the Verified Complaint, and has done more than simply rely on conclusory allegations, *thereby requiring an evidentiary hearing as to the fact-based exceptions to abstention....* The Court hereby orders that an *evidentiary hearing be held addressing bad faith and other exceptions to abstention.*" November 10, 2005 Order (Dkt. No. 21) at 2 (emphasis added).

address any of the other contentions by the parties.

## I. Background

The Court must accept Plaintiff's allegations as true for the purposes of deciding Defendants' Rule 12(b)(6) motion. *See* Discussion, *infra.* Therefore, the following are the facts in this matter, as contained in Plaintiff's Verified Complaint.[5]

Plaintiff is the President of the Lake Placid Snowmobile Club. Verified Complaint (Dkt. No. 1) at ¶ 5. Plaintiff's lawsuit arises out of the contested use of a road in a Forest Preserve area in the Towns of Keene and North Elba, Essex County, New York. *Id.* The road is known by various names, including "Old Mountain Road", "Old Military Road", and "Jackrabbit Trail" (hereinafter "Old Mountain Road" or "Road"), and was established under New York State law in the 1800's. *Id.* at ¶ 18.

On Thursday, March 20, 2003, Plaintiff operated his motor vehicle (a pick-up truck) on Old Mountain Road, driving it to a parking lot on said Road, and thereafter unloaded and operated his snowmobile on the Road, driving from the Town of North Elba to the Town of Keene. *Id.* at ¶ 33–34. The next day, March 21, 2003, Plaintiff was charged with violation of 6 N.Y.C.R.R. § 196.2 in a simplified Information issued by Defendant Forest Ranger Joseph LaPierre; and the Information was followed by a long-form Information issued by Defendant DEC Regional Attorney Christopher Lacombe. *Id.* at ¶ 36. The current dispute stems from these initial events.

Defendants contend that Old Mountain Road is abandoned and, as such, motor vehicle use, including use of snowmobiles, is prohibited. Dkt. No. 1, at ¶¶ 16–17. But, according to Plaintiff, Old Mountain Road is still used by a number of individuals from the general public during the summer and winter months, with approximately 300 people using the Road during the summer and approximately 150 during the winter, for, *inter alia,* driving of all terrain vehicles and other vehicles, snowmobiling, snowshoeing, hiking and skiing. *Id.* at ¶¶ 21–22. Plaintiff has stated that Defendants have knowledge of the specific use of the road for operation of motor vehicles and snowmobiles by individuals other than Plaintiff (Dkt. No. 1), which knowledge Defendants denied at oral argument.

Furthermore, a November 1996 letter from former DEC Regional Forester Tom Wahl to the Adirondack Council (an environmental organization) "acknowledged that the Old Mountain Road is or may be a town road as defined by N.Y.S. Highway Law"; and Defendants have "advised several members of public and private organizations" that the Road is a town road, maintained by either or both of the Towns of North Elba and Keene. *Id.* at ¶¶ 19–20.

Defendants also knew that Adirondack Ski Touring Council ("ASTC"—Plaintiff's acronym) members maintained a portion of the Road from Rockin' River in the Town of Keene to the Village of Saranac Lake (in Franklin County), and passing through the Village of Lake Placid in North Elba, County of Essex. The ASTC and other individuals maintained the Road, with assistance from the Town of Keene, since the 1980's. *Id.* at ¶¶ 23–24.

Plaintiff further refutes Defendants' position that the Road is abandoned, and motor vehicle use is not permitted.

---

**5.** For additional factual background, see Judge Homer's Report–Recommendation and

Order (Dkt. No. 36).

Among other things, when ASTC performed work on the Road earth-moving equipment and other vehicles were employed; inmates from a prison work program were employed to assist with the rebuilding of a bridge on the Road; and volunteers, work crews, and a DEC forest ranger have variously worked to remove fallen trees and a boulder, and otherwise perform improvements to the Road, to aid in travel. *Id.* at ¶¶ 25–29.

Plaintiff wished to operate snowmobiles on the Road, but Defendants informed him that he could not because the Road was abandoned and not public, and was also in a State Forest Preserve designated as a Wilderness area. *Id.* at ¶¶ 30–31. But, Defendants never required permits, or issued permits, for the use of vehicles on the Road by others, such as the ASTC. *Id.* at ¶ 32.

Plaintiff proceeded to operate a snowmobile on the Road, leading to the incidents of March 20 and 21, 2003. Plaintiff was charged in the Town Court of the Town of Keene, and he argued that the Road was a public road and that he therefore had the right to use the Road for snowmobiling. Defendants countered by arguing that the Road was in Forest Preserve land—under New York Environmental Law § 9–0101(6)—classified as Wilderness, and was abandoned, all meaning that use of motor vehicles (including snowmobiles) is prohibited. *Id.* at ¶¶ 36–38. On August 25, 2003, the Town Justice found Plaintiff guilty of violating 6 N.Y.C.R.R. § 196.2. Plaintiff thereafter appealed to the County Court, Essex County, which, in a decision by the Honorable Andrew Halloran, Essex County Court Judge, dated March 23, 2005, reversed the conviction

"on the law, on the facts, and in the interest of justice." *Id.* at ¶¶ 39–40.

Judge Halloran found that the Road is not abandoned, is a public highway, and use of snowmobiles and other vehicles is permitted because § 196 of Title 6 of the N.Y.C.R.R. permits such use on public highways within Forest Preserves. *Id.* at ¶ 41 & Ex. B (*People v. McCulley*, No. 4528, 7 Misc.3d 1004(A), 2005 WL 756582 (801 N.Y.S.2d 240 (Table)) (N.Y. County Ct. Essex County Mar. 23, 2005) (Halloran, J.) (unpublished)).

Following the issuance of the County Court decision, several media outlets (newspaper and radio) covered the story, and Plaintiff granted them interviews. During said interviews, Plaintiff expressed opinions about the case, and his disagreement with the views of the Defendants in this matter (including Plaintiff's view that Defendants are arrogant and abuse their power by insisting on prohibiting Plaintiff's use of the Road). Plaintiff claims First Amendment protection for his statements. Verified Complaint (Dkt. No. 1) at ¶¶ 42–44.

On May 21, 2005, Defendant Forest Ranger LaPierre, at the direction of superiors at the DEC, and in response to Plaintiffs statements that were made in the above-referenced interviews with the media, called Plaintiff on the telephone, asking if Plaintiff intended to operate motor vehicles on the Road. Plaintiff interpreted the call as a threat in response to his interview statements. Plaintiff replied that he would be operating motor vehicles, and thereafter did operate his 1998 Chevrolet pickup truck on the Road, in the Towns of North Elba and Keene, on May 22, 2005.[6] *Id.* at ¶¶ 45–48.

---

**6.** The Court notes that one of Plaintiff's objections to Judge Homer's Report–Recommendation concerned Plaintiff's argument that on

May 22, 2005, he had not actually driven his truck on the Road from North Elba into Keene. Plntf's Obj. (Dkt. No. 38) at 22 (Spe-

On the same day, May 22, 2005, Defendant LaPierre located Plaintiff on the Road, witnessed Plaintiff's operation of the motor vehicle, and issued another simplified Information for operation of a motor vehicle in a Forest Preserve. The charges were brought in the Town Court for the Town of North Elba, but the DEC withdrew said charges on June 13, 2005, and commenced an administrative enforcement proceeding against Plaintiff the next day, June 14, 2005. The enforcement proceeding alleged that Plaintiff violated 6 N.Y.C.R.R. § 196.1. In prosecuting the enforcement proceeding, DEC seeks to have Mr. McCulley found in violation of § 196.1, and seeks an Order for Plaintiff to pay a civil penalty of $100 or $500, in the alternative, and that Plaintiff be prohibited from operation of motor vehicles on the Road in the Forest Preserve. *Id.* at ¶¶ 49–54.

To this Court's knowledge, the administrative enforcement proceeding is still pending, and has been stayed. Report–Rec. (Dkt. No. 36) at 440. Mr. McCulley had not responded to the Complaint in the administrative enforcement proceeding at the time he filed his Verified Complaint in this Federal action on June 27, 2005, but his time to do so had not expired at that time. Verified Complaint (Dkt. No. 1) at ¶ 14.

In his Federal filing, Plaintiff brings the following causes of action: (1) "First Amendment Violation Restraining Plaintiff's Freedom of Speech"; (2) "Fourteenth Amendment—Denial of Substantive Due Process"; (3) "Fourteenth Amendment—Denial of Equal Protection Under the Law"; (4) "Violation of 42 U.S.C. § 1983"; and (5) "Violation of the Constitution of the State of New York". *See* Verified Complaint (Dkt. No. 1) at pp. 14–29.

However, underlying Plaintiff's Federal claims are necessary determinations of whether, *inter alia,* the Road is abandoned; the Road is a New York State Highway; the Road is located in a Forest Preserve designated Wilderness area; and Plaintiff is actually violating laws and regulations under the N.Y.C.R.R. by his actions on the Road. Determinations such as those require interpretation and application of New York State constitutional provisions, statutes, and administrative regulations—indeed, Plaintiff alleges violation of the New York State Constitution, *see supra.*

## II. Discussion

### A. Applicable Standards of Law

Federal Rule of Civil Procedure 12(b)(6) concerns motions to dismiss for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6) (2005). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; [and] ... should not dismiss the complaint 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); addressing standard for a 12(c) motion, which is the same as that for 12(b)(6) motion). *See also Chapman v. New York State Div. for Youth,*

cific Objection 16). But, as just mentioned above, Plaintiff states in his Verified Complaint that "[o]n May 22, 2005, plaintiff operated a 1998 white Chevrolet pickup track on the Old Mountain Road *in the Town of North Elba and in the Town of Keene."* Verified Complaint (Dkt. No. 1) at ¶ 48 (emphasis added). Thus, whatever Plaintiff now argues, his objection to Judge Homer's Report–Recommendation on this point is completely groundless according to Plaintiff's own previous statements.

No. 1:04–CV–867, 2005 WL 2407548 (N.D.N.Y. Sept. 29, 2005) (Hurd, D.J.). The "standard is 'applied with particular strictness when the plaintiff complains of a civil rights violation.'" *Sheppard,* 18 F.3d at 150 (citing *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)). Furthermore, "[i]n considering a motion to dismiss ... under [F.R.C.P.] 12(b)(6), a district court must limit itself to facts stated in the complaint *or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.*'" *Hudson Highlands Veterinary Med. Group, P.C. v. Veterinary Equip. & Tech. Supply, LLC,* 390 F.Supp.2d 393, 395 (S.D.N.Y.2005) (emphasis by the Court) (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991)). *See also Field Day, LLC v. County of Suffolk,* No. 04–CV–2202(DRH)(WDW), 2005 WL 2445788, at *3 (E.D.N.Y. Sept. 30, 2005). "The test is not whether the plaintiff ultimately is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Hudson Highlands,* 390 F.Supp.2d at 395 (citing *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998)).

■ However, Defendants make their motion to dismiss concomitantly with a request that this Court abstain under the doctrines stemming from the cases of *Younger* and *Pullman.* As now-Chief Judge Mordue, of this District, recently stated, "[u]nder the *Younger* doctrine, it is appropriate for a federal court to abstain from exercising jurisdiction where the following three factors are present: (1) there is an ongoing state proceeding; (2) an important state interest is implicated; and (3) the plaintiff has an avenue open for review of constitutional claims in the state court." *Ciszewski v. State of New York,* No. 05–CV–00167(NAM), 2005 WL 1270216, at *4 (N.D.N.Y. May 26, 2005) (citing *Philip Morris, Inc. v. Blumenthal,*

123 F.3d 103, 105 (2d Cir.1997)). *See also Donangelo, Inc. v. Town of Northumberland,* No. 1L03 CV 934, 2005 WL 681494, at *2 (N.D.N.Y. Mar. 24, 2005) (McCurn, Senior D.J.).

■ *Pullman* abstention is different from *Younger* abstention, and thus different factors must be considered by the Court when exercising its discretion as to abstention under *Pullman.* "Three basic conditions must be present to trigger *Pullman* abstention: '[(1)] the state statute must be unclear or the issue of state law uncertain; [(2)] resolution of the federal issue must depend upon the interpretation given to the ambiguous state provision; and [(3)] the state law must be susceptible of an interpretation that would avoid or modify the federal constitutional issue.'" *Williams v. Lambert,* 46 F.3d 1275, 1281 (2d Cir.1995) (citing and quoting *United Fence & Guard Rail Corp. v. Cuomo,* 878 F.2d 588, 594 (2d Cir.1989)). *See also Roe v. City of New York,* 232 F.Supp.2d 240, 251 (S.D.N.Y.2002) (citing and quoting *Planned Parenthood of Dutchess–Ulster, Inc. v. Steinhaus,* 60 F.3d 122, 126 (2d Cir.1995)). The Second Circuit has explained that "the concern of *Pullman* abstention is 'that a federal court will be forced to interpret state law without the benefit of state-court consideration and therefore under circumstances *where a constitutional determination is predicated on a reading of the statute that is not binding on state courts and may be discredited at any time*—thus essentially rendering the federal-court decision advisory and the litigation underlying it meaningless.'" *Nicholson v. Scoppetta,* 344 F.3d 154, 170 (2d Cir.2003) (emphasis by the Court) (citing and quoting *Moore v. Sims,* 442 U.S. 415, 428, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979)).

It should be noted, however, that courts have agreed that "[a]nalysis of the cases which have considered the issue of absten-

tion indicates that the various abstention doctrines are more distinct in theory than in actual practice. They overlap and mix together to form the basis for abstention in particular cases. This is especially true in cases challenging in federal court state attempts to implement local land use policy.'" *Ne. Mines, Inc. v. Town of Smithtown*, 584 F.Supp. 112, 113 (E.D.N.Y.1984) (citing and quoting *Kent Island Joint Venture v. Smith*, 452 F.Supp. 455, 461 (D.Md. 1978)).

### B. Motion to Dismiss Under Rule 12(b)(6)

Defendants have made their Rule 12(b)(6) motion and request for abstention tinder *Younger* and *Pullman* concomitantly, and the Court has determined that the proper avenue at this time is for the Court to evaluate this matter in light of the standards impacting on *Younger* and *Pullman* abstention. The Court will not address the state law claims or those federal claims that are intricately intertwined with state law issues, which are more properly determined by the State courts and State administrative hearing officers. Although finding that abstention is appropriate, the Court finds that it is not appropriate to grant Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. The Court will deny Defendants' Rule 12(b)(6) motion, and will stay the Federal proceedings until the completion of State proceedings—waiting to see if resolution of the difficult state law issues resolves or moots the federal claims. *See Berman Enter., Inc. v. Jorling*, 3 F.3d 602, 608 (2d Cir. 1993); *Kunz v. New York State Comm'n on Judicial Conduct*, 356 F.Supp.2d 188, 193 (N.D.N.Y.2005) (Kahn, D.J.).

### C. Abstention Under the Younger Doctrine

As is evident from the Background Section, *supra*, this matter revolves around determinations that must be made concerning state law and policy, use of state/town roads, and both interpretation and application of, *inter alia*, state highway laws and environmental conservation and protection laws and regulations. This decision contemplating abstention is also being considered prior to "any proceedings of substance on the merits" having taken place in this Court, leaving the door open for abstention. *See Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 237–238, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (O'Connor, J.).

The United States Supreme Court, in its *Younger* opinion and elsewhere, has stated that equity and comity influence federal court abstention decisions. "[T]his includes 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 364, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (Scalia, J.) (citing and quoting *Younger*, 401 U.S. at 43–44, 91 S.Ct. 746).

■ *Younger* abstention has been extended by the Supreme Court to apply in civil as well as criminal cases, even extending to proceedings that are not pending in court but are nevertheless "judicial in nature." *New Orleans Pub. Serv.*, 491 U.S. at 370, 109 S.Ct. 2506 (citations omitted); *Kunz*, 356 F.Supp.2d at 192–3. Indeed, "[t]he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d

116 (1982) (Burger, C.J.) (citing, *inter alia, Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979)). However, if a proceeding is not judicial in nature—such as a legislative proceeding—abstention is not appropriate. *New Orleans Pub. Serv.,* 491 U.S. at 370, 109 S.Ct. 2506 (concerning Council's legislative proceedings, including, *inter alia,* utility ratemaking). Furthermore, there are certain narrow exceptions to *Younger* abstention that exist—such as harassment or bad faith—even if important state interests are involved. *See Middlesex County,* 457 U.S. at 429, 102 S.Ct. 2515 (citing *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965)); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 611, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (Rehnquist, J.) ("*Younger* ... [does] of course allow intervention in those cases where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whether manner and against whomever an effort might be made to apply it.' ").

■ Following this Court's review of the submissions, hearing of oral arguments, and consideration of Judge Homer's Report–Recommendation and Order, the Court has determined that, first, important State interests do exist, in that the State of New York has a deep interest in the interpretation and application of its State constitutional provisions, laws, and regulations (such as the Highway and Environmental Conservation laws so intricately woven into the fabric of this case). As Defendants have stated, New York State and NYS DEC also have an interest in "the State's right to protect trails within areas designated as 'wilderness' within the Adirondack Forest Preserve from being used by motor vehicles." Defts' Mem. Law in Support of Motion to Dismiss ("Defts' Mem.") (Dkt. No. 11) at 21 & n. 8. The Court disagrees with Plaintiff's incorrect assertion that "[t]here is not an important state interest implicated in the DEC administrative enforcement proceeding." Plntf's Mem. of Law in Opposition ("Plntf's Mem.") (Dkt. No. 16) at 9. Plaintiff tries to characterize the State proceedings as addressing "[n]othing more or less" than whether Plaintiff may operate his pick-up truck on Old Mountain Road under 6 N.Y.C.R.R. § 196.1 and N.Y. Envtl. Conserv. Law § 9–0105. *Id.* at 9–10. Plaintiff fails to understand, however, that in order for that to be determined, a decision must also be reached as to, *inter alia,* the operation of the State Highway and Environmental Conservation laws, and the issue of the constitutionality of certain Highway Law provisions under the New York State Constitution. These are significant State interests.

Second, the Court, in adopting Judge Homer's thorough findings (Dkt. No. 36), does not find the facts as presented by Plaintiff to suffice for a finding that bad faith, harassment, or other such "extraordinary circumstances" exist in the prosecution of McCulley under the State environmental laws and regulations, such that this Court would be required to reject abstention in this matter. *See, generally, Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Cullen v. Fliegner,* 18 F.3d 96 (2d Cir.1994).

Third, this Court can make no further rulings on the matters pending before it, especially the federal constitutional claims, since those rulings would require this Court to first pass judgment on the applicability, constitutionality, and operation of specific state laws and regulations. If the laws and regulations of the State of New

York and the NYS DEC are found to be constitutional and valid, it is possible that Plaintiff's federal claims could fail or be mooted. Although Plaintiff argues that the Federal claims need not be decided for the State proceedings to be resolved (which may be true), *see* Plntf's Mem. (Dkt. No. 16) at 15, Plaintiff misses the point that the outcome of the State proceedings must be known before this Court may fully and accurately address the Federal claims that Plaintiff brings.

State proceedings—the administrative hearings, to be followed more than likely by State court appellate review—are currently pending, and provide a forum for the determination of the State law issues that are at the heart of this case. Although the State administrative proceedings might not provide an avenue for the determination of all of Plaintiff McCulley's constitutional challenges, the subsequent State court appellate review, or Article 78 proceeding, should provide such an opportunity. In addition, Plaintiff argues that he would be unable to join all of the Defendants he is currently bringing an action against in the administrative or Article 78 proceedings in the State forum, and therefore that should lead this Court to refrain from abstaining. But, that argument fails on two grounds. First, if Plaintiff loses in the administrative and court proceedings at the State level, which involve the DEC, Plaintiff may have no claims for constitutional violations by the other Defendants in this action, since their prosecution of him will have been shown to be valid. Second, if Plaintiff should succeed in the State proceedings, or if Plaintiff should wish to bring claims of Federal constitutional violations against Defendants even if he loses in the State proceedings, Plaintiff could still do so in this Court upon completion of State proceedings.

■ It should be understood that New York State law provides for appeals to the Appellate Divisions and Court of Appeals from decisions of administrative agencies. *See e.g.* N.Y. C.P.L.R. 5601, 5602, & 5702 (McKinney 2005); N.Y. ENVTL. CONSERV. LAW § 19–0511 (McKinney 2005). Constitutional challenges may usually be raised in State court appellate review from administrative decisions, and it is unusual for such claims not to be heard. *See New York State Club Assoc., Inc. v. City of New York,* 487 U.S. 1, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988) (White, J.); *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (Rehnquist, J.); *Williams v. Lambert,* 46 F.3d 1275 (2d Cir.1995). In fact, the parties to this action have not presented any specific facts or citations to make this Court believe that the New York State courts would not or could not hear Plaintiff's constitutional claims upon appeal from an administrative decision. Plaintiff should raise his constitutional claims in the administrative proceeding. If the claims cannot be ruled on, that tribunal will say so. But, Plaintiff will have preserved his claims for appeals to the State courts—which likely will be empowered to hear the claims. Both State and Federal judges take an oath to be bound by and uphold the Constitution of the United States. *See, generally, Hirschfeld v. City of New York,* No. 97 CIV. 6059(MBM), 1997 WL 605115, at *2 (S.D.N.Y. Sept. 30, 1997). *See also* U.S. Const. art. VI, cl. 2.

Thus, this Court will not assume that the New York courts are unable to provide Plaintiff with constitutional review of his claims. *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 14–15, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Powell, J.) ("the burden [of claiming that the state court cannot hear constitutional claims] rests on the federal plaintiff to show 'that state proce-

dural law barred presentation of [its] claims.' ... [W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.") (citations omitted).

■ In fact, even the presence of a request for money damages does not necessarily require the rejection of abstention by a federal court. Although some sources believe that the Supreme Court would find *Younger* abstention to only be applicable in matters of equity (injunctive or declaratory relief), some lower courts are split. *See* ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 13.3 (3d ed. 1999). As the Eastern District of Michigan recently held, "the fact that the [Plaintiffs] are also seeking money damages does not mean that abstention is unwarranted. As explained ... this case is really about whether or not Holly Township has adopted a valid ordinance, regardless of the [Plaintiffs'] creative constitutional claims, which is best left to the Michigan courts." *Andrews v. Holly Twp.*, 216 F.Supp.2d 678, 687 (E.D.Mich.2002) (finding that *Pullman* and *Burford* abstention was warranted). The *Andrews* case is similar to the case currently at bar, and this Court largely agrees with that Court's decision concerning abstention.

The three-factor test for *Younger* abstention has been satisfied, and no exceptions are applicable. Thus, this Court will abstain from deciding the issues presented in the case at bar.

### D. Abstention Under the Pullman Doctrine

It has been determined that abstention is appropriate under the *Younger* doctrine. As stated supra, " [a]nalysis of the cases which have considered the issue of absten-

tion indicates that the various abstention doctrines are more distinct in theory than in actual practice' ". *Ne. Mines*, 584 F.Supp. at 115. Therefore, the Court will briefly address the related abstention doctrine under *Pullman*, but will abstain under *Pullman* for much the same reasons as under *Younger*.

■ As in the *Younger* discussion, *supra*, the application of the *Pullman* Doctrine in this section of the Court's opinion is affected by the many issues of state law and policy that are intertwined with any and all federal issues that exist—and which may dispose of Plaintiff McCulley's federal constitutional claims depending upon the resolution in the State proceedings. "The '*Pullman*' abstention doctrine ... has been held to be appropriate 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.' " *Ne. Mines*, 584 F.Supp. at 115 (citing and quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)).

Again, the courts have held that for *Pullman* abstention to apply, " '[ (1) ] the state statute must be unclear or the issue of state law uncertain; [ (2) ] resolution of the federal issue must depend upon the interpretation given to the ambiguous state provision; and [ (3) ] the state law must be susceptible of an interpretation that would avoid or modify the federal constitutional issue.' " *Lambert*, 46 F.3d at 1281 (citations omitted).

As set forth by the Court above, the issues of State law in this case are both uncertain and unsettled. For instance, there exists the County Court decision, from an appeal of a criminal conviction, that purports to pass judgment upon the application and operation of the State

Highway Law and environmental laws and regulations. However, the parties present viable arguments as to both the applicability of the County Court decision, and the application of the relevant state law and regulations.[7] Furthermore, the Court has determined, as stated elsewhere in this decision, that the Federal issues cannot be resolved until the issues of State law have been settled—and the State administrative hearings and courts are the proper fora for such resolution in the first instance. And, finally, said resolution could, indeed, avoid or modify the Federal constitutional issues. For example, Plaintiffs claims of retaliation for exercise of his First Amendment rights might be mooted if the DEC is found to be properly enforcing the environmental laws and regulations in prohibiting Plaintiffs operation of motor vehicles on Old Mountain Road, because absent a finding that the DEC regulation is being incorrectly used for enforcement in this case, Plaintiff would have a much steeper uphill climb to prove that the Defendants are violating his constitutional rights by rightfully prosecuting his violation of State laws and regulations. The State Highway Law and Environmental Conservation Law sections and regulations could be found to have a limiting construction, such that, *inter alia,* they are or are not applicable to Old Mountain Road, do or do not create Forest Preserve or Wilderness area through which Old Mountain Road passes, and do or do not apply to Plaintiffs activities on the Road. The possibility of a reasonable limiting construction(s) impacting on the operation and application of the laws and regulations can permit abstention by Federal courts. *See, generally, Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984).

The State statutes and regulations are, indeed, fairly subject to different interpretations that could impact on the outcome of the Federal constitutional questions, as evidenced by the diametrically opposed arguments of the parties in this case, and the ruling of the County Court. As such, abstention under *Pullman* is appropriate in this matter, so that the State agencies and courts may first consider the issues. *See, generally, Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 306, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (White, J.) ("But when the state statute at issue is 'fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question,' . . . abstention may be required 'in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication' ") (internal citations omitted).

Given the stay that this Court will impose, rather than dismissing Plaintiff's claims, *see Harrison v. Nat'l Assoc. for the Advancement of Colored People,* 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959) (Harlan, J.), Plaintiff will have the opportunity at a later date to bring any remaining Federal claims that are not addressed in the State proceedings. The difference will be that the field will have been cleared of the debris of uncertainty, and the State courts will have been permitted the opportunity to rule on the application and enforcement of the State laws and regulations before this Court rules on the Federal constitutional claims that are, in this Court's opinion, intertwined with the operation of the State laws and regulations that will be at issue in the State fora.

And, again, adopting Judge Homer's thorough findings (Dkt. No. 36) as to ab-

---

7. *See, inter alia,* Defts' Resp. (Dkt. No. 39) at 6–7 & n. 7.

stention and the inapplicability of any exceptions thereto, the Court finds Plaintiff has not shown that bad faith, harassment, or other such "extraordinary circumstances" exist in the prosecution of McCulley under the state environmental laws and regulations, such that this Court would be required to reject abstention in this matter.

### III. Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED,** that Judge Homer's Report–Recommendation (Dkt. No. 36) is **APPROVED** and **ADOPTED IN PART,** only as to Judge Homer's findings concerning *Younger* and *Pullman* abstention and the inapplicability of any exceptions thereto, but is **NOT ADOPTED IN PART** as to Judge Homer's recommendation that Defendants' Motion to dismiss be granted; and it is further

**ORDERED,** that Defendants' Motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 11) is **DENIED;** and it is further

**ORDERED,** that this Court hereby **ABSTAINS** under the *Younger* and *Pullman* Doctrines from determining the issues presented by Plaintiff's claims, and **STAYS** Plaintiff's Federal claims until such time as the State administrative proceedings and State court proceedings and appeals are completed; and it is further

**ORDERED,** that Plaintiff's Motion for a temporary restraining order and order to show cause (Dkt. No. 2) are **DENIED AS MOOT,** given the current decision of the Court; and it is further

**ORDERED,** that Plaintiff inform this Court of the **final resolution** of the State administrative and court proceedings within **THIRTY (30) DAYS** of such final resolution thereof; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

### REPORT–RECOMMENDATION AND ORDER

DAVID R. HOMER, United States Magistrate Judge.

Plaintiff James W. McCulley ("McCulley") commenced this action against the New York State Department of Environmental Conservation (DEC), Region 5 of that department, six named DEC employees, and ten "John Doe" DEC employees. McCulley alleges that defendants violated his rights under the United States and New York constitutions and seeks compensatory and punitive damages as well as injunctive relief under 42 U.S.C. § 1983 and New York law. Compl. (Docket No. 1). Defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on abstention grounds. Docket No. 11. In an order filed November 10, 2005, the district court referred the case to the undersigned for an evidentiary hearing "addressing bad faith and other exceptions to abstention" and for a report and recommendation thereon in accordance with 28 U.S.C. § 636(b)(1)(B). Docket No. 21 at 2. An evidentiary hearing was held on February 2 and 3, 2006. For the reasons which follow, it is recommended that defendants' motion to dismiss be granted.

### I. Background

The facts related herein constitute the Court's findings on all controverted issues of material fact.

This case arises in the context of the ongoing conflicts over the use of forests and wilderness in the Adirondack Mountains of New York. The Adirondack Park Agency (APA) was created within the executive branch of New York State government to oversee the conservation, protection, development, and use of the lands

within its boundaries. N.Y. Exec. Law §§ 801, 803 (McKinney 2005). Under the direction of the APA, DEC is charged with the responsibility for, *inter alia*, protecting and managing the forests and wilderness in the Adirondacks. N.Y. Envtl. Conserv. Law §§ 1–0101, 3–0101 (McKinney 2005). McCulley, a resident of Lake Placid in Essex County, is a snowmobile enthusiast and since at least 2000, the President of the Lake Placid Snowmobile Club. In that capacity he has been an outspoken advocate to and against DEC for the designation of additional trails for use by snowmobilers in the Adirondacks, particularly for trails which connect with other previously designated trails to allow snowmobilers more varied and wider-ranging trails.

The interests of snowmobilers, and of other motorized transports such as all-terrain vehicles, frequently conflict with those of individuals who enjoy cross-country skiing, snowshoeing, and other forms of non-motorized travel over snow. These enthusiasts object not only to the noise caused by motorized transports but also to the alleged degradation of trails and threats to the safety of others on the trails caused by motorized transports. Thus, snowmobilers and cross-country skiers find themselves frequently in competition for the use and designation of trails in the Adirondacks, and it frequently falls to DEC to manage and resolve these conflicts.

## A. The Road

The conflict which gives rise to this case concerns one such trail. That trail was originally part of what later came to be known as the Old Mountain Road and which originally extended from Northwest Bay at Westport, New York on Lake Champlain west across Essex and Franklin Counties to St. Lawrence County. At different times, that road has also been known as Old Military Road, the Northwest Bay Road, and the Jackrabbit Trail. The portion at issue in this case runs from a point .9 miles west of Route 73 in the Town of Keene approximately 3.5 miles west to Alstead Hill Road in the Town of North Elba in the direction of Lake Placid and all within Essex County [hereinafter the "Road"].

The Road has always been a one-lane dirt road running between its two end-points through forest and wilderness. By 1972, the motor traffic on the Road had dwindled and the Road had come to be used almost exclusively by hikers in the warmer months and by snowmobilers, cross-country skiers and snowshoers in the winter months. *See* Defs. Ex.[1] 7 (APA State Land Master Plan—1972) at 29; *see also* Defs. Ex. 8 (APA State Land Master Plan—1979) at 46. Beaver ponds caused water and marshes to cover the Road in spots. By 1987, however, the Road had been closed to motorized vehicles, including snowmobiles.[2] *See* Defs. Ex. 9 (APA State Land Master Plan—1987) at 51 ("The ... Road has been closed and the area now fully conforms to wilderness standards.").[3] DEC posted signs along

---

1. "Pl. Ex." and "Defs. Ex." followed by a number refer to the exhibits received in evidence during the evidentiary hearing.

2. Isolated instances of motorized vehicles on the Road occurred after 1987 but appear to have occurred less than once per year and generally with DEC or Town authorization.

3. The term "wilderness" includes within its definition "an area of state land or water having primeval character, without significant improvement or permanent human habitation, which is protected and managed so as to preserve, enhance and restore, where necessary its natural conditions...." Defs. Ex. 11 (APA State Land Master Plan—2001) at 20. Snowmobiles and other motorized vehicles and equipment are prohibited in areas designated as "wilderness." *Id.* at 23–24.

the Road that snowmobiles and other motorized vehicles were prohibited from use on the Road.

By this time, the Road had become devoted in winter months to cross-country skiers and snowshoers and increasingly became referred to as the Jackrabbit Trail. Maintenance of the Road for these purposes had primarily been assumed by the Adirondack Ski Touring Council (ASTC), a state-wide organization dedicated to improving and maintaining cross-Country ski trails and to promoting the interests of cross-country skiing. Tr. 210–11.[4] This primarily involved work done by ASTC volunteers removing boulders, trees, and brush from the Road in the summer months and grooming the Road for skiers in the winter months. The ASTC performed the work at first through temporary permits granted by DEC and, since 2002, pursuant to an Adopt a Natural Resource Agreement which allowed the ASTC access to the Road for maintenance for a five-year period. In some years the ASTC was assisted for periods of one or two days by employees of DEC or, until 1996, of the Towns of Keene and North Elba. The ASTC views snowmobiles as inconsistent with use of the Road as a cross-country ski trail.

### B. McCulley v. DEC

Beginning in 2000, McCulley began searching for new snowmobile trails in the Lake Placid-area. McCulley determined from DEC that the Road was now deemed part of the wilderness and, therefore, snowmobiles were prohibited on the Road. Directly to DEC and in the media, McCulley advocated the designation of additional snowmobile trails in the area and, in particular, the Road. McCulley's advocacy became increasingly strident and his

relations with DEC representatives occasionally contentious.

Through DEC's responses to requests he made for documents under the New York Freedom of Information Law (FOIL) and through other research, McCulley concluded that the Road was a town road traversing the Towns of Keene and North Elba and, therefore, DEC had no authority to regulate its use to prohibit snowmobiles. McCulley presented this view to DEC, but DEC adhered to its position that the Road had been abandoned by the towns and no longer existed as a right-of-way through the wilderness area.

McCulley determined to bring a legal challenge to DEC's jurisdiction over the Road. He received legal advice, however, that he lacked standing to do so until he had been charged with violating a pertinent DEC regulation. Accordingly, on March 20, 2003, McCulley drove to the Road in the Town of North Elba, unloaded his snowmobile, and drove the snowmobile over the Road into the Town of Keene and back. McCulley then telephoned a DEC Forest Ranger, reported what he had done, and asked that he be issued a ticket for violating DEC regulations. The next day, DEC served McCulley with an Environment Conservation Appearance Ticket (ECAT) charging the use of a snowmobile on State land in a forest preserve in the Town of Keene in violation of N.Y. Comp. Codes R. & Regs. tit.6, § 196.2 (2005). However, DEC then determined that the ticket had been issued improperly because no ranger had personally observed the violation and withdrew the ticket on March 22, 2003.

In May 2003, an article appeared in a local newspaper reporting that nothing had

---

4. "Tr." followed by a number refers to the page of the transcript of the evidentiary hearing on February 2 and 3, 2006.

come of McCulley's threats to drive a snowmobile on the Road to precipitate a legal challenge to DEC's claim to jurisdiction over the Road. McCulley responded with a letter to the editor stating that "I rode my snowmobile on the ... Road...." Pl. Ex. 44 at 1.[5] On June 21, 2003, DEC issued a new summons charging McCulley with the same violation of § 196.2 on March 20, 2003. Pl. Ex. 48. The trial on that charge took place on July 20, 2003 in Keene Town Court. During a four hour trial, McCulley, who represented himself, contended that the Road remained a town road and was not State land as DEC charged. DEC[6] contended that the Road had been abandoned by use and had become State land. McCulley was found guilty and was sentenced to pay a fine of $50.

McCulley, now represented by counsel, appealed his conviction to the Essex County Court contending that the town court erred in finding that the Road was State land. In an opinion dated March 23, 2005, the County Court reversed McCulley's conviction, holding that the Road had been created by statute as a town road, had not been abandoned, and thus was not State land. *People v. McCulley*, No. 4528, 7 Misc.3d 1004(A), 2005 WL 756582 (N.Y.Co. Ct. Mar. 23, 2005) (Halloran, J.); *see also* Compl. at Ex. B. DEC sought permission from the New York Attorney General to appeal this ruling to the New York Court of Appeals, but the Attorney General denied such permission on the ground that reversal of the decision on legal grounds was unlikely because, in addition to holding that the Road was not State land as a matter of law, the County Court determined to reverse McCulley's conviction on the facts and in the interests of justice. *See id.* at *13. The decision received substantial coverage in the Lake Placid-area media and through McCulley. *See, e.g.,* Pl. Ex. 70.

Although no appeal was taken, DEC declined to accept the Essex County Court decision as authoritative, continued to oversee use of the Road as State land, and awaited further opportunities to litigate the issue.[7] Believing that he had established that the Road was a town road, McCulley contended that the Road was open to motorized vehicles, including snowmobiles. On May 21, 2005, defendant Joseph LaPierre, a DEC Forest Ranger, left a telephone message with McCulley, who then returned his call. LaPierre inquired if McCulley had any information about a report that a backhoe was recently observed on the Road. Interpreting LaPierre's inquiry as a challenge, McCulley told LaPierre that he would be driving his

---

5. In his verified complaint, McCulley testified that the event occurred on March 20, 2003. Compl. at ¶ 33. In his letter to the editor, McCulley asserted that it occurred on March 24, 2003. Pl. Ex. 44 at 1. At the hearing, McCulley testified that the date was March 23, 2003. Tr. at 103–04. Although not a material issue, the Court finds that the date of the event was March 20, 2003.

6. The prosecution was conducted by defendant Christopher Lacombe, DEC Regional Counsel, who requested and received permission from the Essex County District Attorney to do so on behalf of the District Attorney.

7. According to a senior DEC attorney, DEC views the dispute with McCulley over the Road and the decision of the Essex County Court in *People v. McCulley* as significant for DEC's management of State lands in forest preserves. According to DEC, those lands and preserves include hundreds of miles of old town roads which, like the Road, DEC believes have been abandoned and therefore become State land. Thus, DEC believes that if the *People v. McCulley* precedent prevails, its ability to protect and preserve wilderness areas of the State will be impaired. Tr. at 421.

pickup truck on the Road the next morning at 10:00 a.m.

The next morning, LaPierre went to the Road and posted new DEC signs declaring the Road off-limits to motorized vehicles. *See* Defs. Ex. 3. McCulley arrived as scheduled, drove his truck along the Road from North Elba over the boundary line into Keene and back as LaPierre took photographs. *See* Defs. Ex. 6. LaPierre then issued McCulley an ECAT for operating a motor vehicle in the Town of North Elba in a forest preserve in violation of N.Y. Comp.Codes R. & Regs. tit. 6, § 196.1. Lacombe again sought and received authorization from the Essex County District Attorney to prosecute the case. DEC concluded that a proceeding in town court, even if successful, would again result in an appeal to the same Essex County Court judge who had issued the decision in McCulley's earlier case. At the return date of the ticket on or about June 10, 2005, Lacombe dismissed the ECAT and caused McCulley to be served with a summons for an administrative proceeding commenced by DEC alleging the same conduct by McCulley on May 22, 2005 in violation of N.Y. Comp.Codes R. & Regs. tit. 6, § 196.1 and similar provisions of the N.Y. Envtl. Conserv. Law. Pl. Ex. 98. DEC seeks a civil penalty of up to $500. *Id.* at 4. According to DEC, the administrative proceeding will allow DEC to take advantage of a lower standard of proof and make a more complete record to establish that the Road is State land. McCulley commenced this action on June 29, 2005, defendants moved to dismiss on abstention grounds, and the DEC administrative proceeding was stayed pending decision on that motion.

## II. Discussion

Defendants have moved to dismiss on the ground that the federal courts should abstain from entertaining this action in deference to the pending DEC administrative proceeding against McCulley. The doctrine of abstention articulated by the Supreme Court in *Younger v. Harris,* 401 U.S. 37, 43–45, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), rests on "interrelated principles of comity and federalism." *Spargo v. New York State Comm'n on Judicial Conduct,* 351 F.3d 65, 74 (2d Cir.2003). Thus, the doctrine assumes that "a state proceeding provides an adequate forum for the vindication of federal constitutional rights." *Cullen v. Fliegner,* 18 F.3d 96, 103 (2d Cir.1994). "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan,* 282 F.3d 191, 198 (2d Cir.2002). The doctrine applies to state administrative proceedings. *See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,* 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986).

*Younger* abstention requires a party to demonstrate three conditions. First, there is a pending state court proceeding. Second, an important state interest is implicated in that proceeding. Third, there will be an adequate opportunity for the plaintiff to obtain judicial review in the state proceeding of his or her federal constitutional claims. *Kern v. Clark,* 331 F.3d 9, 10 (2d Cir.2003); *Diamond "D",* 282 F.3d at 198 (citing *Grieve v. Tamerin,* 269 F.3d 149, 152 (2d Cir.2001)). There appears no dispute here that defendants have met these three requirements. However, McCulley nevertheless contends that abstention should be denied because this case satisfies the exceptions identified in *Younger* of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Younger,* 401 U.S. at 54, 91 S.Ct. 746. A federal plaintiff bears the burden of demonstrating that an exception

applies. *Diamond "D"*, 282 F.3d at 198. Thus, on the district court's referral, the issue presented is whether McCulley has established that either exception[8] bars *Younger* abstention here. *See* Docket No. 21. An appellate court reviews *de novo* a district court's application of the abstention doctrine. *See Schlagler v. Phillips*, 166 F.3d 439, 441 (2d Cir.1999).

## A. Bad Faith

■ In a companion case to *Younger*, the Supreme Court explained that while the elements for abstention may be satisfied, a federal court should nevertheless deny abstention "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction...." *Perez v. Ledesma*, 401 U.S. 82, 85, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971). The Second Circuit has held that this exception may be found to apply in the narrow circumstances where the federal defendants have no reasonable expectation of success in the state proceeding and where "the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Diamond "D"*, 282 F.3d at 199 (citing *Schlagler*, 166 F.3d at 442–44). Thus, "[a] state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception." *Id.*

### 1. Likelihood of Success in State Proceeding

The viability of defendants' administrative prosecution of McCulley rests on their contention that the Road was abandoned by the towns to the State no later than 1987 and thus had become wilderness within the jurisdiction of DEC at the time of McCulley's alleged 2005 violation. McCulley challenges this contention, asserting that at the time of his alleged violation, the Road was not wilderness under DEC's jurisdiction because the Road was created by statute, it could be abandoned to wilderness only according to statutorily prescribed procedures which had not then occurred here, and DEC thus had no jurisdiction over the Road at the time of his alleged violation.

It appears for several reasons that there exists no reasonable likelihood that DEC will ultimately prevail in the state proceeding. First, DEC's contention that the Road was abandoned by use to its jurisdiction lacks merit. Under New York law, roads may be created by use or by statute. *Compare* N.Y. High. Law § 189 (McKinney 2001) (roads created by use), *with* N.Y. High. Law § 171 (McKinney 2001) (roads created by statute). In either case, a road once created comes within the jurisdiction of the town in which it is found. N.Y. High. Law §§ 171, 189. A road created by use may be abandoned by disuse pursuant to certain procedures, most notably a vote in favor of abandonment by a majority of the town board of the town where the road is located and the filing of a certification of that vote. N.Y. High. Law § 205(1) (McKinney 2001). N.Y. High. Law § 212 appears to provide another procedure for the abandonment of roads created by statute requiring a determination and certification of abandonment by the state agency having jurisdiction or

---

**8.** In *Diamond "D"*, the Second Circuit referred to the two *Younger* exceptions of bad faith and extraordinary circumstances. 282 F.3d at 198, 201. However, at least one court in this circuit has found a third *Younger* exception for a series of repeated prosecutions.

*See Kern v. Clark*, No. 01–CV–4508, 2004 WL 941418, at *7–9 (W.D.N.Y. Apr. 9, 2004). To the extent applicable here, this factor is considered as part of the bad faith exception and not as a separate *Younger* exception.

control over the land, generally DEC or the Department of Transportation.

There is no dispute that no such procedural requirements for abandonment were met here prior to McCulley's alleged violation. Defendants contend that these procedural requirements were merely ministerial acts unnecessary to accomplish abandonment where the required disuse of the Road had already occurred. It is arguable that the issuance or filing of the required certifications may be deemed ministerial or clerical and therefore unnecessary to complete an abandonment. However, the formal determination of abandonment by a town or state agency constitutes the essential determination of abandonment required by the statute. The absence of any such determination here prior to McCulley's alleged violation appears to leave the Road within the jurisdiction of the Towns of Keene and North Elba on the date in question and thereby defeat defendants' assertion in the state proceeding that DEC had jurisdiction to cite McCulley for the alleged violation.

Second, this conclusion is supported by the decision in *People v. McCulley*, 2005 WL 756582; *see also People v. Paul Smith's Elec. Light & Power & R.R. Co.*, Findings of Fact at ¶¶ 43, 45 & Decision at 3 (Essex Co. Sup.Ct. dec. July 29, 1953) (same). Defendants have offered no coherent contrary legal theory, stating only that their position will be presented in the state proceeding. Thus, the decision in *People v. McCulley* remains at least persuasive authority that DEC lacked jurisdiction over the Road at the time of McCulley's alleged violation.

For these reasons, McCulley has established that defendants lack a reasonable likelihood of success in the pending state administrative proceeding.

### 2. Defendants' Subjective Motivation

As the Second Circuit has explicitly held, "the subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of, this inquiry." *Diamond "D"*, 282 F.3d at 199 (citing *Schlagler*, 166 F.3d at 442–43). Two decisions discussed by the Second Circuit in *Diamond "D"* illustrate the centrality of the subjective motivation inquiry to the determination of bad faith. In *Cullen*, a teacher opposing the reelection of two school board members contended that the school district selectively enforced against him a statutory prohibition on electioneering within 100 feet of a polling place. The school district moved to dismiss the action on *Younger* abstention grounds in light of a pending disciplinary action against the plaintiff. The district court denied the school district's motion and enjoined the disciplinary proceeding, finding that the school district "had a 'past history of personal conflict' with Cullen, and their corresponding desire 'to do something about' him rose to the 'level of animus.'" *Cullen*, 18 F.3d at 104; *see also Diamond "D"*, 282 F.3d at 189. The Second Circuit affirmed, holding that the bad faith exception applied where the state proceeding had been commenced "in a 'strictly ad *hominem*' manner." *Cullen*, 18 F.3d at 104.

In *Schlagler*, the plaintiff had been charged with aggravated harassment under a New York statute which had been found unconstitutional by an intermediate state appellate court. The plaintiff commenced a federal action alleging that the prosecution abridged his First Amendment rights, defendants moved to dismiss on *Younger* abstention grounds, and the district court granted the motion, finding that while no animus toward the plaintiff had been demonstrated, "the statute was facially unconstitutional, and therefore, any

prosecution under it could only be in bad faith." *Diamond "D"*, 282 F.3d at 199 (citing *Schlagler*, 166 F.3d at 443–44). The Second Circuit reversed, holding that "because the prosecution was not retaliatory or otherwise illegitimate in its motivation, and, in fact, was nothing more 'than a straightforward enforcement of the laws of New York, [the] case does not fall within the bad faith exception as set forth in *Cullen.*'" *Id.*

■ Thus, the Second Circuit concluded in *Diamond "D"* that these cases illustrate the centrality to the bad faith exception of a showing of "subjective bad faith" or "malevolent intent." *Diamond "D"*, 282 F.3d at 199–200. Absent a determination of this element, *Younger* abstention should apply and principles of comity mandate deference by a federal court to state court proceedings in the first instance to address and resolve the federal constitutional claims asserted by the plaintiff. *Id.* In the absence of subjective bad faith, a federal court may address federal constitutional claims only after the state courts have had the opportunity to do so. *Id.* Therefore, even when, as here, a plaintiff has demonstrated that the state proceeding is fatally flawed, that plaintiff must also demonstrate that the federal defendants are pursuing the state proceeding principally because of a personal animus or a malevolent intent toward the plaintiff rather than a desire to enforce state law.

Here, McCulley contends that in addition to DEC's groundless claim of jurisdiction over the Road, such subjective bad faith has been demonstrated by the pattern of contacts between he and DEC officials since 2002. These include the hostile attitude of DEC officials in refusing to accede to McCulley's requests to designate the Road for snowmobiles, McCulley's FOIL requests for DEC documents, the enforcement proceedings brought against him by DEC, and a conversation between McCulley and a DEC ranger concerning measurements and photographs taken by McCulley and others on an Adirondack trail during a summer hike.[9] It also includes an incident in May 2004 following a public meeting at which McCulley ridiculed the DEC Commissioner in his statement at the meeting. Following the meeting, McCulley encountered DEC representatives at a local restaurant. One of those representatives confronted McCulley and using profanities, hollered at McCulley that DEC would never agree to McCulley's requests.

■ With one exception, these incidents bespeak at worst a concern by DEC for enforcement of what it believes are valid DEC restrictions on use of the Road rather than a personal animus toward McCulley. Since 2002, McCulley and DEC have found themselves at odds over whether motorized vehicles should be permitted on the Road and, later, whether the Road remains a town road not subject to DEC regulations. McCulley acknowledges that his conduct has moved from seeking to persuade DEC in the early years to designate the Road for snowmobiles to seeking to compel such use. Tr. 87. McCulley's efforts were passionate, stri-

---

9. McCulley testified at the hearing that in this conversation, LaPierre threatened to arrest him. Tr. 151. LaPierre testified that he likely told McCulley that it constituted a violation to conduct scientific research in the Adirondacks without a permit but that he never threatened to arrest McCulley. Tr. 318–19. McCulley was never arrested for this matter.

In light of all the circumstances and having observed the testimony of the two witnesses, it appears most likely that McCulley interpreted LaPierre's statement as a threat but that LaPierre never threatened to arrest McCulley on this occasion. Accordingly, LaPierre's testimony concerning this event rather than McCulley's is credited.

dent, conveyed in person and through all available media, and occasionally *ad hominem*.[10] They also included efforts to bring the issue of jurisdiction over the Road to a head in court by alerting DEC that he had or would be driving a motorized vehicle on the Road both on March 20, 2003 and on May 22, 2005. McCulley's provocative actions must be considered in assessing defendants' motivation in bringing the pending state proceeding.

For their part, defendants appear generally to have responded to McCulley with appropriate professionalism. McCulley's FOIL requests were answered, he was received and his inquiries answered at DEC offices, unplanned encounters in the community between McCulley and defendants were courteous and unremarkable, and the hearing in this Court produced no evidence of a personal animus toward McCulley by any defendant beyond disagreement with McCulley over use of the Road. The one exception occurred in May 2004 following the public meeting at which McCulley ridiculed the DEC Commissioner. Following the public meeting, McCulley encountered various DEC employees, none named as a defendant herein, at a local restaurant. One DEC employee angrily confronted McCulley and, freely using profanity, told McCulley that he would never receive State approval for a snowmobile trail in Lake Placid. Tr. 141–46. However, this conversation did not involve any defendant in this case and no defendant was present at the time. Moreover, at worst, the DEC employee threatened that McCulley would not receive approval of his requests from the State, not that the State would take affirmative action against McCulley. This isolated inci-

dent falls short of demonstrating personal animus against McCulley.

Finally, there is the matter of DEC's multiple proceedings against McCulley. The first two resulted from McCulley's determination to challenge in court DEC's claimed jurisdiction over the Road. After advising DEC that he had driven a snowmobile on the Road on March 20, 2003, DEC issued a ticket to McCulley for the offense. That first charge was dismissed by DEC after DEC determined that no DEC employee had actually witnessed McCulley's conduct. However, after McCulley stated in a letter to a newspaper that he had driven a snowmobile on the Road, DEC re-charged him on June 21, 2003 for the March 20 incident. McCulley's conviction on that charge was reversed on March 23, 2005. As the result of driving a vehicle on the Road on May 22, 2005, McCulley was issued another ticket by DEC. On June 10, 2005, that ticket was dismissed by DEC in favor of the presently pending administrative charge against McCulley.

There is no indication in the record that any of these four proceedings were instituted by any defendant in retaliation against McCulley for his advocacy or his anti-DEC positions. There is also no indication that these charges resulted from any personal animus by any defendant toward McCulley. Rather, defendants' conduct in these proceedings are consistent with "the straightforward enforcement of the laws of New York." *Diamond "D"*, 282 F.3d at 199 (quoting *Schlagler*, 166 F.3d at 443–44). Moreover, these proceedings were invited by McCulley as a method of resolving his dispute with DEC over the Road. The fact that defendants accepted his invitations and have zealously sought to

---

10. For example, in May 2004, speaking at a public meeting attended by DEC representatives, McCulley referred to the DEC Commis-

sioner as having received "the number one loon award." Tr. 140.

prevail in those proceedings does not evidence the malevolent intent required to demonstrate subjective bad faith.

Accordingly, McCulley has failed to demonstrate that defendants acted with subjective bad faith in commencing the pending administrative proceeding against him. McCulley has thus failed to establish the applicability here of the bad faith exception to *Younger* abstention.

## B. Extraordinary Circumstances

 The second *Younger* exception requires a plaintiff to demonstrate that " 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it. . . ." *Kugler v. Helfant,* 421 U.S. 117, 124–25, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *Diamond "D",* 282 F.3d at 201 (describing the requirements for this exception as a "high standard"). To invoke this exception, a plaintiff must demonstrate "(1) that there be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; *and* (2) that a finding be made that the litigant will suffer 'great and immediate' harm if the federal court does not intervene." *Diamond "D",* 282 F.3d at 201 (citing *Trainor v. Hernandez,* 431 U.S. 434, 441–42, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977)).

 Here, there is no evidence that the administrative proceeding is so biased against McCulley as to be incompetent to resolve fairly the federal constitutional claims raised by McCulley. *See Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Diamond "D",* 282 F.3d at 201. Moreover, even if DEC's administrative proceeding does prove incompetent to address McCulley's federal constitutional claims, McCulley could seek further review independent of DEC through an Article 78 proceeding through the New York court system challenging the DEC administrative proceeding. *See* N.Y. C.P.L.R. art. 78 (McKinney 1994 & Supp. 2005). Thus, McCulley has failed to demonstrate that the pending and available state court proceedings are "incapable of fairly and fully adjudicating the federal issues before it." *Kugler,* 421 U.S. at 124, 95 S.Ct. 1524.

Accordingly, McCulley has also failed to establish the applicability of the second *Younger* exception.

## III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the exceptions to abstention be found inapplicable to this case and that defendants' motion to dismiss on grounds of abstention be **GRANTED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Secretary of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

DATED: April, 25, 2006.

Albany, New York.